TREG R. TAYLOR
ATTORNEY GENERAL

Ronald W. Opsahl
(Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov

Attorney for the State of Alaska

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, NORTH SLOPE BOROUGH, and ARCTIC SLOPE REGIONAL CORPORATION,<br><br>Plaintiffs,<br><br>and<br><br>STATE OF ALASKA,<br><br>Applicant in Intervention,<br><br>v.<br><br>JOSEPH R. BIDEN, JR. in his official capacity as President of the United States, UNITED STATES DEPARTMENT OF THE INTERIOR, DEB HAALAND, in her official capacity as Secretary of the Department of the Interior, LAURA DANIEL-DAVIS, in her official capacity as Principal Deputy Assistant Secretary, | **STATE OF ALASKA'S MOTION TO INTERVENE**<br><br><br><br><br><br>Case No. 3:21-cv-00245-SLG |

| | |
|---|---|
| Land and Mineral Management, | ) |
| BUREAU OF LAND | ) |
| MANAGEMENT, TRACY STONE- | ) |
| MANNING, in her official capacity as | ) |
| Director of the Bureau of Land | ) |
| Management, and THOMAS | ) |
| HEINLEIN, in his official capacity as | ) |
| Director of the Bureau of Land | ) |
| Management Alaska Office, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pursuant to Federal Rule of Civil Procedure 24, the State of Alaska (the "State") moves to intervene as a plaintiff in the above-captioned matter as of right, or alternatively, for permissive intervention. The State is entitled to intervene as of right to protect the State, its political subdivisions, and its citizens from the socioeconomic impacts resulting from the United States Department of Interior's de facto moratorium prohibiting reasonable oil and gas development on the Coastal Plain of the Alaska National Wildlife Refuge. Counsel for the State has contacted all parties to obtain their respective positions on this motion. Plaintiffs Alaska Industrial Development and Export Authority ("AIDEA"), the North Slope Borough, and Arctic Slope Regional Corporation do not oppose the State's intervention. Defendants reserve taking a position until they have had an opportunity to review the motion and any associated pleadings. The State's proposed complaint and a proposed order are filed herewith.

*AIDEA, et al. v. Biden, et al.*            Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene            Page 2 of 16
Case 3:21-cv-00245-SLG    Document 9    Filed 01/19/22    Page 2 of 16

# MEMORANDUM OF POINTS AND AUTHORITIES

# BACKGROUND

The Arctic National Wildlife Range was established in 1960, and, since at least 1977, the nation has debated whether oil and gas development should be permitted in it, or if the entire area should be closed to development.[1] In 1980, with the enactment of the Alaska National Interest Lands Conservation Act ("ANILCA"), Congress expanded and redesignated it the Arctic National Wildlife Refuge ("ANWR") and withdrew most of it from oil and gas development. However, Congress expressly deferred its decision on whether oil and gas development would be permitted in the area of ANWR with the greatest potential for hydrocarbon exploration and development, an approximately 1.56- million-acre area along Alaska's northern coast.[2] This area is known as the "Coastal Plain" or the "Section 1002 Area."[3]

After decades of considering whether oil and gas development should take place in the Coastal Plain, Congress determined that oil and gas development was appropriate and authorized it in the Tax Cuts and Jobs Act of 2017, ("Tax Act").[4] The Tax Act is remarkably concise and clear in its intent and direction. Under the expressed provisions of the Tax Act, Congress mandated that the Secretary of Interior "shall establish and administer a competitive oil and gas program for the leasing, development, production,

---

[1] U.S. Dep't of Interior, *Arctic National Wildlife Refuge, Alaska, Coastal Plain Resource Assessment*, 2 (1987).
[2] 16 U.S.C. §§ 3142, 3143 (ANILCA §§ 1002, 1003).
[3] *Id.*
[4] Tax Cuts and Jobs Act § 20001, Pub. L. 115-97, 131 Stat. 2054, 2235-2237 (2017).

*AIDEA, et al. v. Biden, et al.*     Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene     Page 3 of 16
Case 3:21-cv-00245-SLG    Document 9    Filed 01/19/22    Page 3 of 16

and transportation of oil and gas in and from the Coastal Plain."[5] Further, Congress directed the Secretary of Interior to "conduct not fewer than 2 lease sales area-wide under the oil and gas program under this section,"[6] with the first occurring no later than 4 years after the enactment of the Tax Act, and the second occurring no later than 7 years after enactment.[7] Congress also directed that each mandatory lease sale include "not fewer than 400,000 acres" and that the areas offered include "those areas that have the highest potential for the discovery of hydrocarbons."[8] In furtherance of Congress' intent, the Tax Act also amended ANILCA, removing the Section 1003 prohibition on oil and gas development in the Coastal Plain and adding an additional purpose to ANILCA, "to provide for an oil and gas program on the Coastal Plain."[9]

BLM undertook a thorough environmental review of the potential impacts of an oil and gas leasing program on the Coastal Plain, with a 60-day public scoping period, an extended 75-day comment period on the draft environmental impact statement and public meetings across Alaska. In September 2019, BLM issued its Final Environmental Impact Statement ("FEIS") for the program.[10] In August 2020, BLM issued its Coastal Plain Oil and Gas Leasing Program Record of Decision, approving the leasing program and

---

[5]   *Id.* § 20001(b)(2)(A); *see also id.* § 20001(a)(1) (defining the "Coastal Plain" as the area known as the Section 1002 Area within the Arctic National Wildlife Refuge).
[6]   *Id.* § 20001(c)(1)(A).
[7]   *Id.* § 20001(c)(1)(B)(ii).
[8]   *Id.* § 20001(c)(1)(B)(i).
[9]   *Id.* § 20001(b)(2)(B).
[10]  *See* https://eplanning.blm.gov/public_projects/nepa/102555/20003762/250004418/Volume_1_ExecSummary_Ch1-3_References_Glossary.pdf.

*AIDEA, et al. v. Biden, et al.*                                                                Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene                                                              Page 4 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 4 of 16

responding to comments on the FEIS.[11] The Record of Decision describes four alternatives that were considered and explains the selection of Alternative B, which opens all of the Coastal Plain to potential leasing, subject to a number of lease stipulations and required operating procedures designed to protect wildlife and other natural resources.[12]

A lease sale was held in December 2020, and bids were opened on January 6, 2021. AIDEA was the successful bidder on nine leases and secured lease agreements with BLM for seven tracts in the Coastal Plain.

However, when President Biden took office in January 2021, he immediately issued Executive Order 13990, section 4(a) of which imposed a moratorium "on all activities of the Federal Government relating to the implementation of the Coastal Plain Oil and Gas Leasing Program, as established in the Record of Decision signed August 17, 2020, in the Arctic National Wildlife Refuge."[13] On June 1, 2021, the Secretary of the Interior issued Order No. 3401, "in furtherance of Section 4(a) of Executive Order 13990," directing the Department of the Interior to "conduct a new, comprehensive analysis of the potential environmental impacts of the Program," and imposing "a temporary halt on all Department activities related to the Program in the Arctic Refuge," while the new analysis is being conducted.[14] The order specifically

---

[11]  See https://eplanning.blm.gov/public_projects/102555/200241580/20024135/250030339/Coastal%20Plain%20Record%20of%20Decision.pdf.
[12]  *Id*. at A1-A33.
[13]  Executive Order 13990, Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, § 4(a), 86 Fed. Reg. 7037 (Jan. 25, 2021).
[14]  See https://www.doi.gov/sites/doi.gov/files/elips/documents/so-3401-comprehensive-analysis-and-temporary-halt-on-all-activites-in-the-arctic-national-wildlife-refuge-relating-to-the-coastal-plain-oil-and-gas-leasing-program.pdf.

*AIDEA, et al. v. Biden, et al.*  Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene  Page 5 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 5 of 16

instructs that "the Directors of the Bureau of Land Management and the U.S. Fish and Wildlife Service shall not take *any action* to authorize any aspect of the Program, including, but not limited to, any leasing, exploration, development, production, or transportation, and *shall not process any* pending or future applications for such activities."[15] In August 2021, the BLM announced that to comply with the Secretary's order, it would delay processing applications to complete archeological surveys on AIDEA's Coastal Plain leases until the new EIS process has been completed.[16] In effect, these orders impose a moratorium on all federal approvals of oil and gas operations, including preliminary activities necessary for such operations, on the Coastal Plain, and potentially undo the December 2020 lease sale,[17] in violation of the clear mandate of the Tax Act.

The scoping period for the supplemental EIS closed on October 4, 2021. Based on BLM's Notice of Intent, a new Final EIS will not be issued until sometime in late 2022 at the earliest. On November 4, AIDEA filed this lawsuit against President Biden and other members of his administration, challenging the moratorium on oil and gas development in the Coastal Plain and the reopening of the environmental impact analysis. ECF No. 1. AIDEA amended its Complaint on December 8, 2021. ECF No. 7.

The State seeks to intervene in this action in order to protect the State's significant economic interests in federal oil and gas development within the State, and to protect

---

[15] *Id.* (emphasis added).
[16] Am. Compl. ¶ 97 (ECF No. 7).
[17] BLM has indicated that, in the supplemental EIS, it potentially will analyze an alternative that does not include leasing the tracts that were offered in the 2020 lease sale.

*AIDEA, et al. v. Biden, et al.*     Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene     Page 6 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 6 of 16

ANILCA's promise to "provide[] adequate opportunity for satisfaction of the economic and social needs of [Alaskans]."[18] As explained below, the State's motion to intervene should be granted.

## ARGUMENT

I.  **THE STATE IS ENTITLED TO INTERVENTION AS OF RIGHT.**

Rule 24(a) of the Federal Rules of Civil Procedure provides:

On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[19]

Intervention of right under Rule 24(a)(2) involves application of a four-part test. First, the applicant's motion must be timely. Second, the applicant must assert an interest relating to the transaction or property that is the subject of the action. Third, the applicant must show that its interest may be impaired by the action. Fourth, the interests of the applicant must not be represented adequately by the parties already involved in the action.[20] This intervention test is to be "broadly construed in favor of proposed intervenors."[21] For the reasons set forth below, the State meets each element for intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2).

---

[18]  *See* Tax Act § 20001 (b)(5)(A) (50% of all monies received from sales, bonuses, royalties, and rentals associated with federal oil and gas leases within the Coastal Plain are to be paid to the State of Alaska); 16 U.S.C. § 1301(d).
[19]  Fed. R. Civ. P. 24(a), (a)(2).
[20]  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-818 (9th Cir. 2001); *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993).
[21]  *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 ("In general, we construe

*AIDEA, et al. v. Biden, et al.*  Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene  Page 7 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 7 of 16

A.      **The State's Motion Is Timely.**

The Ninth Circuit considers three factors when evaluating the timeliness of a motion to intervene: (1) the stage of the proceedings; (2) the prejudice to the other parties; and (3) the reason for and length of the delay.[22] Here, AIDEA, the plaintiff, filed its first amended complaint on December 8, 2021. ECF No. 7. The defendants' answer currently is due on February 7, 2022. No dispositive motions have been filed. The case has barely begun. Accordingly, the existing parties will not be prejudiced by the State's intervention. The motion is timely.

B.      **The State Has Significantly Protectable Interests in This Case.**

To intervene as a matter of right, an applicant must establish "a 'protectable interest' in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action."[23] Rule 24(a)(2) does not require a specific type of legal or equitable interest to support intervention.[24] "Rather, it is generally enough that [1] the interest is protectable under some law, and [2] that there is a relationship between the legally protected interest

---

Rule 24(a) liberally in favor of potential intervenors."); *United States v. Los Angeles*, 288 F.3d 391, 397-398 (9th Cir. 2002).
[22]      *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997); *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995); *see Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972) ("While timeliness is a prerequisite to any claim for intervention under Rule 24, it is settled—particularly where intervention is sought as of right—that the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness." (internal footnotes omitted)).
[23]      *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981); *see also Donaldson v. United States*, 400 U.S. 517, 531 (1971).
[24]      *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 818.

*AIDEA, et al. v. Biden, et al.*                                                                                        Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene                                                                                        Page 8 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 8 of 16

and the claims at issue."[25] A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."[26]

Various types of interests have supported intervention, and the Ninth Circuit has held that "[a]n applicant demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'"[27] In addition, an economic interest that is "concrete and related to the underlying subject matter of the action" may support intervention under Rule 24(a)(2).[28]

The outcome of the present case poses a direct and substantial threat to the State's economic interests. Responsible oil and natural gas development is essential to Alaska's economy. It creates numerous economic opportunities for Alaska and its citizens, including well-paying construction and permanent jobs, and opportunities for state, local, and national businesses, while protecting Alaska's pristine environment with robust environmental regulations. Possible revenues to Alaska from oil and gas development on

---

[25] *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *Sierra Club*, 995 F.2d at 1484).
[26] *Id.* (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).
[27] *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir.1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1177–1180).
[28] *United States v. Alisal Water Corp.*, 370 F.3d 915, 919-920 (9th Cir. 2004).

*AIDEA, et al. v. Biden, et al.*     Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene     Page 9 of 16
Case 3:21-cv-00245-SLG    Document 9    Filed 01/19/22    Page 9 of 16

the Alaska National Wildlife Refuge Coastal Plain are significant.[29] The Coastal Plain Oil and Gas Program Final EIS estimates that somewhere between one-and-a-half to ten billion barrels of oil could be produced from the Coastal Plain.[30] Thus, oil and gas development in the Coastal Plain could potentially generate billions of dollars in direct revenue for the State of Alaska, including from both lease sales and royalties on oil and gas produced. Such development would further benefit the State through corporate income taxes, greater employment opportunities for Alaskans, and by keeping the Trans- Alaska Pipeline operational. The Secretary's moratorium directly threatens the continued development of federal oil and gas resources from the Alaska National Wildlife Refuge Coastal Plain.

Because this case seeks an order holding unlawful and setting aside the defendants' moratorium, the State has legally protectable interests that this Court should find sufficient to support intervention as of right under Rule 24(a).

### C. Disposition of This Action Will Impair or Impede the States' Interests.

The third element in the four-part test, impairment, "follows from the factors" related to an applicants' protectable interest.[31] Indeed, the question of impairment is not separate from the question of existence of an interest.[32] Moreover, this burden is minimal.

---

[29] *See* Tax Act § 20001 (b)(5)(A) (50% of all monies received from sales, bonuses, royalties, and rentals associated with federal oil and gas leases within the Coastal Plain are to be paid to the State of Alaska).
[30] https://eplanning.blm.gov/public_projects/nepa/102555/20003762/250004418/Volume_1_ExecSummary_Ch1-3_References_Glossary.pdf at p3-49.
[31] *See Sierra Club*, 995 F.2d at 1486.
[32] *See, e.g.*, *Natural Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978).

*AIDEA, et al. v. Biden, et al.*     Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene     Page 10 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 10 of 16

The Advisory Committee Notes for Rule 24 provide that, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."[33] A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."[34] In reviewing this criterion, the courts look to the "'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s] available."[35]

Considering the State's significant economic interests, the third element for intervention is clearly met. This action's disposition, as a practical matter, may impair or impede the States' ability to protect its asserted interests.

### D. The State's Interests Are Not Adequately Represented by the Existing Parties.

The fourth prong of the test for intervention as of right is to show that the proposed intervenor's interests will not be adequately protected by the existing parties. The burden under this prong is "minimal"; that is, a party seeking to intervene need only show that representation of its interest "'*may* be' inadequate."[36] The Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes that state that 'if an absentee would be substantially affected in a practical sense by the determination made in

---

[33] Advisory Committee's Notes, Fed. R. Civ. P. 24 (1966); *see also Forest Conservation Council*, 66 F.3d at 1498.
[34] *Wilderness Soc'y*, 630 F.3d at 1178 (quoting *Lockyer*, 450 F.3d at 441).
[35] *See, e.g.*, *Natural Res. Def. Council*, 578 F.2d at 1345.
[36] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

*AIDEA, et al. v. Biden, et al.* Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene Page 11 of 16
Case 3:21-cv-00245-SLG Document 9 Filed 01/19/22 Page 11 of 16

an action, he should, as a general rule, be entitled to intervene.'"[37] There can be no doubt that the State will be substantially affected by the determination in this action, and should therefore be permitted to intervene.

More specifically, the Ninth Circuit considers three factors to determine whether the applicant for intervention's interests will be adequately represented by an existing party, including: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect."[38]

Here, the State has interests broader than those of the existing parties and particularly accounts to its citizens. The State has a direct interest in the lands at issue because it has a top-filed land selection that coincides with AIDEA's leases.[39] Further, the State will receive substantial tax and royalty revenues resulting from oil and gas development on the Coastal Plain, and its citizens will necessarily enjoy the benefit from such revenues. Development will also benefit citizens through increased employment, increased contracting for labor, materials and equipment, and the "spin off" economic

---

[37] *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822).
[38] *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996).
[39] Although the BLM's determination that the selected land was within the boundaries of ANWR has been upheld on appeal by the Interior Board of Land Appeals ("IBLA"), *see State of Alaska*, 196 IBLA 155 (Nov. 9, 2020), the time for the State to seek judicial review has not yet run and the State has not yet decided whether to seek judicial review of IBLA's decision.

*AIDEA, et al. v. Biden, et al.*            Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene            Page 12 of 16
Case 3:21-cv-00245-SLG  Document 9  Filed 01/19/22  Page 12 of 16

activity resulting from increased employment and contracting.[40] Because the State's interests are broader than the parties', it is "likely that [Plaintiffs] will not advance the same arguments" as the State.[41] Thus, representation of the State of Alaska's interest by any other party to this litigation will be inadequate, and intervention should be granted.

E.    **The State Has Article III Standing To Participate in This Action.**

The State has standing to participate in this action under Article III of the U.S. Constitution, which requires a litigant to demonstrate that it has "suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury."[42] The Supreme Court has acknowledged that for purposes of invoking jurisdiction, states are "not normal litigants," but rather act subject to a "well-founded desire to preserve [their] sovereign territory."[43] Here, the State seeks to intervene in order to protect its economic interests in continued leasing and development of federal oil and gas resources within Alaska. Therefore, the State's "stake in the outcome of this case is sufficiently concrete" for this Court to confer standing.[44]

---

[40]    https://eplanning.blm.gov/public_projects/nepa/102555/20003762/250004418/Volume_1_ExecSummary_Ch1-3_References_Glossary.pdf at pp. 3-323 – 3-328.
[41]    *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.
[42]    *Massachusetts v. Env't Prot. Agency*, 549 U.S. 497, 517 (2007).
[43]    *Id*. at 518-519.
[44]    *Id*. at 519.

AIDEA, et al. v. Biden, et al.                                              Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene                                                    Page 13 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 13 of 16

## II. THE STATE SATISFIES THE REQUIREMENTS FOR PERMISSIVE INTERVENTION.

Rule 24(b) of the Federal Rules of Civil Procedure governs permissive intervention and provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.[45]

Under Rule 24(b), the possibility of impairment of a significant protectable interest is not required. Instead, all that is necessary for permissive intervention is that intervenor's "claim or defense and the main action have a question of law or fact in common." Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."[46] Rule 24(b) also requires the court to consider whether permissive intervention would cause undue delay or would prejudice adjudication of the rights of the original parties.

In its complaint in intervention, the State asserts that the defendants violated a number of federal natural resources statutes by implementing its leasing moratorium. These claims are similar to the claims asserted by the Plaintiffs and are based upon the same underlying facts. In addition, given the early stages of proceedings in this case, permitting the State to intervene will not unduly delay or prejudice the rights of the

---

[45] Fed. R. Civ. P. 24(b)(1), (b)(3).
[46] *Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940).

*AIDEA, et al. v. Biden, et al.*     Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene     Page 14 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 14 of 16

original parties. Accordingly, allowing the State to permissively intervene is appropriate if this Court does not allow the State to intervene as of right.

## CONCLUSION

For all the foregoing reasons, the State of Alaska respectfully requests that the Court grant leave to intervene in this case as a matter of right, or, in the alternative, permissive intervention.

DATED: January 19, 2022.

                    TREG R. TAYLOR
                    ATTORNEY GENERAL

                    By:   */s/ Ronald W. Opsahl*
                    Ronald W. Opsahl
                    (Alaska Bar No. 2108081)
                    Assistant Attorney General
                    Department of Law
                    1031 W. 4th Avenue, Suite 200
                    Anchorage, AK 99501
                    Telephone: (907) 269-5232
                    Fax: (907) 276-3697
                    Email: ron.opsahl@alaska.gov

                    Attorney for the State of Alaska

*AIDEA, et al. v. Biden, et al.*                     Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene                Page 15 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 15 of 16

# CERTIFICATE OF SERVICE

I certify that on **January 19, 2021**, the foregoing was served electronically on all parties listed on the CM/ECF system.

>  */s/ Christina M. Fisher*
> Christina M. Fisher
> Law Office Assistant I

*AIDEA, et al. v. Biden, et al.*   Case No. 3:21-cv-00245-SLG
State of Alaska's Motion to Intervene   Page 16 of 16
Case 3:21-cv-00245-SLG   Document 9   Filed 01/19/22   Page 16 of 16