Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar No. 1705025)
Brian Litmans (AK Bar No. 0111068)
TRUSTEES FOR ALASKA
1026 W. Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
Fax: (907) 276-7110
bbrisson@trustees.org
sbostrom@trustees.org
bpsarianos@trustees.org
blitmans@trustees.org

*Attorneys for Movant Intervenor-Defendants Gwich'in Steering
Committee, Alaska Wilderness League, Alaska Wildlife Alliance,
Canadian Parks & Wilderness Society-Yukon,
Defenders of Wildlife, Environment America, Inc.,
Friends of Alaska National Wildlife Refuges,
National Wildlife Federation, National
Wildlife Refuge Association, Northern
Alaska Environmental Center, Sierra Club,
The Wilderness Society, and Wilderness
Watch*

Karimah Schoenhut (*pro hac vice pending*)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
50 F St., NW 8th Floor
Washington, DC 20001
Phone: (202) 548-4584
Fax: (202) 547-6009
karimah.schoenhut@sierraclub.org

*Attorney for Movant Intervenor-Defendant Sierra Club*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, *et al.*, | Case No. 3:21-cv-00245-SLG |
| Plaintiffs, and | |
| STATE OF ALASKA, | |
| Intervenor-Plaintiff, | |
| v. | |
| JOSEPH R. BIDEN, JR., *et al.*, | |
| Defendants. | |

**MOTION TO INTERVENE BY GWICH'IN STEERING COMMITTEE, ALASKA WILDERNESS LEAGUE, ALASKA WILDLIFE ALLIANCE, CANADIAN PARKS & WILDERNESS SOCIETY-YUKON, DEFENDERS OF WILDLIFE, ENVIRONMENT AMERICA, INC., FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, NATIONAL WILDLIFE FEDERATION, NATIONAL WILDLIFE REFUGE ASSOCIATION, NORTHERN ALASKA ENVIRONMENTAL CENTER, SIERRA CLUB, THE WILDERNESS SOCIETY, AND WILDERNESS WATCH**
**(Fed. R. Civ. P. 24)**

Pursuant to Federal Rule of Civil Procedure 24(a) and (b), the Gwich'in Steering Committee, Alaska Wilderness League, Alaska Wildlife Alliance, Canadian Parks & Wilderness Society–Yukon, Defenders of Wildlife, Environment America, Inc., Friends of Alaska National Wildlife Refuges, National Wildlife Federation, National Wildlife Refuge Association, Northern Alaska Environmental Center, Sierra Club, The Wilderness Society, and Wilderness Watch (collectively "Movant Intervenors") move to intervene as

defendants in this litigation challenging the President and the Department of the Interior's (DOI) actions regarding the Coastal Plain Oil and Gas Leasing Program (Leasing Program).

## INTRODUCTION

The Alaska Industrial Development and Export Authority (AIDEA), the North Slope Borough (the Borough), the Arctic Slope Regional Corporation (ASRC) and Intervenor-Plaintiff the State of Alaska (collectively "Plaintiffs") challenge actions taken by the President, DOI, the Bureau of Land Management (BLM), and agency officials. Those actions include an Executive Order, a Secretarial Order, and lease-suspension orders that suspend leases and oil and gas activities on the Coastal Plain of the Arctic National Wildlife Refuge (Arctic Refuge) and direct a new environmental analysis be conducted to correct legal deficiencies in the Leasing Program. First Am. Compl. at 21–25 (ECF No. 7); Compl. in Intervention for Declaratory J. and Injunctive Relief at 2–3 (ECF No. 22). Plaintiffs allege that the actions are ultra vires and violate the Administrative Procedure Act (APA), the Alaska National Interest Lands Conservation Act (ANILCA), the Federal Land Management and Policy Act (FLPMA), and Title II of the Tax Cuts and Jobs Act (Tax Act). First Am. Compl. at 27–33; Compl. in Intervention for Declaratory J. and Injunctive Relief at 9–12. Plaintiffs seek declaratory judgment, a permanent injunction invalidating and vacating these actions, and an order directing DOI to "proceed with leasing and development." First Am. Compl. at 34; Compl. in

Intervention for Declaratory J. and Injunctive Relief at 13–14. Movant Intervenors seek to intervene on behalf of the Defendants to defend these actions, to protect the Coastal Plain from oil and gas activities under the harmful and unlawful Leasing Program, and to protect their interests in separate litigation related to the Leasing Program.

The Movant Intervenors satisfy the four-factor test for intervention as of right under Civil Rule 24(a). First, the motion is timely, coming early in the litigation before Defendants have filed an answer. Second, the Movant Intervenors have a longstanding interest in protecting the exceptional cultural, wilderness, and wildlife values of the Arctic Refuge from oil and gas activities, seeking to protect this area for subsistence, spiritual, and recreational use and enjoyment. This lawsuit is also related to, and implicates, a pending lawsuit brought by Movant Intervenors regarding the legality of the Leasing Program: *Gwich'in Steering Committee v. Haaland* (*GSC v. Haaland*), Case No. 3:20-cv-00204-SLG (D. Alaska). Third, the action may impair Movant Intervenors' interests because oil and gas activities, including exploration, have long-term and severe impacts on the land and resources and are incompatible with their interests and uses of the Coastal Plain. Additionally, the relief sought in this case threatens DOI's commitments in Movant Intervenors' parallel lawsuit regarding DOI's implementation of the Leasing Program while conducting its new environmental analysis. Fourth and finally, the Movant Intervenors' interests in protecting the cultural, wilderness, and wildlife values of the Coastal Plain are distinct from DOI's interests in managing the

Arctic Refuge and implementing the Leasing Program; as a result, DOI may not adequately represent the Movant Intervenors' interests. Accordingly, this Court should grant the motion for intervention as a matter of right. In the alternative, the Movant Intervenors satisfy the test for permissive intervention under Civil Rule 24(b).

Counsel for Movant Intervenors conferred with counsel for the Plaintiffs, Intervenor-Plaintiff, and Defendants regarding this motion. Plaintiffs and Intervenor-Plaintiff reserve their positions on the motion until they have an opportunity to review the motion; Defendants take no position on the motion.

## BACKGROUND

The Arctic Refuge is America's largest and wildest national wildlife refuge. The Arctic Refuge's 1.5-million-acre Coastal Plain is important habitat for wildlife, including caribou, polar bears, birds, seals, muskox, whales, wolverine, Dall sheep, and wolves. Ex. 1 at 1, 11 (CCP at 1-23, H-11); Order re: Mots. for TRO and Prelim. Inj. at 4, *GSC v. Haaland* (ECF No. 69) [hereinafter *GSC* Order]. The Porcupine Caribou Herd, which migrates through Alaska and Canada, relies on the Coastal Plain for calving, post-calving, and insect relief habitat, and for high-protein nutrition away from predators. Ex. 1 at 4–8 (CCP at 4-98–4-102). The Arctic Refuge lies at the heart of the traditional homelands of the Gwich'in and Iñupiat; the Coastal Plain is sacred land to the Gwich'in because of its importance to the Porcupine Caribou Herd. Demientieff Decl. at 8, 23–24; *GSC* Order at 4–5. Since time immemorial, the Gwich'in have relied on the Porcupine

Caribou Herd for subsistence and their cultural foundation. Demientieff Decl. at 6–9, 22–24; *GSC* Order at 4. The Gwich'in are "caribou people," and call the Coastal Plain "Iizhik Gwats'an Gwandaii Goodlit" — "the Sacred Place Where Life Begins." Demientieff Decl. at 8; *GSC* Order at 4. Gwich'in traditional knowledge instructs that caribou will be harmed by Coastal Plain oil and gas development. Demientieff Decl. at 17, 19, 22–24; *GSC* Order at 4–5.

The majority of the Coastal Plain is also designated critical habitat for denning polar bears because the rivers and hills create unique areas of deep snow drifts ideal for denning. Ex. 1 at 9–10 (CCP at 4-118, 4-122). In summer, the abundant plants and insects provide nesting and foraging habitat for many birds, which use the Coastal Plain during annual migrations around the world. Ex. 1 at 1, 3 (CCP at 1-23, 4-78). The Arctic Refuge's wilderness values are incomparable and offer unique scientific and recreation opportunities. Ex. 1 at 1–2, 12 (CCP at 1-23, 1-25, H-26).

Because of its unique values, the Coastal Plain has been protected for decades. It was designated in 1960 as the Arctic National Wildlife Range (Range) "[f]or the purpose of preserving unique wildlife, wilderness and recreational values." Ex. 2 at 1 (Public Land Order 2214, Establishing the Arctic National Wildlife Range). When Congress passed ANILCA in 1980, it re-designated the Range as the Arctic National Wildlife Refuge, expanding it south and west, and recognized four additional purposes. ANILCA, § 303(2)(A), (B), Pub. L. No. 96-487, 94 Stat. 2390 (Dec. 2, 1980). Other than

authorizing an expired, one-time exploration program, ANILCA prohibited oil and gas activities in the Arctic Refuge. 16 U.S.C. §§ 3142(a)–(h), 3143; *Alaska v. Jewell*, 2015 U.S. Dist. Lexis 94574, at *23 (D. Alaska July 21, 2015).

This changed in 2017. A provision of the Tax Act directed the Secretary to adopt an oil and gas leasing program for the Coastal Plain. Tax Act, § 20001, Pub. L. 115-97 (2017). It added an additional purpose for the Coastal Plain: "to provide for an oil and gas program." *Id.* § 20001(b)(2)(B)(iii). It calls for two lease sales — the first by the end of 2021. *Id.* § 20001(c)(1)(A), (B)(ii)(I). It also limited surface development to a maximum of 2,000 acres. *Id.* § 20001(c)(3); *see also GSC* Order at 6–7. It did not otherwise modify the purposes of the Arctic Refuge or waive other applicable laws.

DOI and BLM adopted an extensive and harmful Leasing Program in August 2020. *GSC* Order at 9. Movant Intervenors brought a lawsuit challenging the Leasing Program, alleging violations of ANILCA, the National Environmental Policy Act (NEPA), the Tax Act, the National Wildlife Refuge System Administration Act (NWRSAA), the Wilderness Act, and the Endangered Species Act (ESA). *See generally* First Am. Compl., *GSC v. Haaland* (ECF No. 19). The lawsuit includes claims that DOI and BLM failed to consider a reasonable range of alternatives, in violation of NEPA, and failed to lawfully interpret and apply Section 20001 of the Tax Act. *Id.* at 61–62, 67–68.

In December 2020, BLM issued a notice of the lease sale, 85 Fed. Reg. 78,865–66 (Dec. 7, 2020), and held the lease sale in early 2021. *Leases Issued for ANWR Coastal*

*Plain Oil & Gas Program*, BUREAU OF LAND MANAGEMENT (Jan. 19, 2021),

https://www.blm.gov/press-release/leases-issued-anwr-coastal-plain-oil-gas-program (last

visited Feb. 25, 2022). As a result of that lease sale, AIDEA received seven leases and

two other companies each obtained one lease. *Id*. AIDEA subsequently sought to conduct

field surveys in support of a multi-year seismic exploration program on its leases. Ex. 3 at

1 (AIDEA's Proposed Statement of Services); Ex. 4 at 1 (AIDEA Press Release).

On his first day in office, President Biden issued Executive Order 13990, noting

the "alleged legal deficiencies" of the Leasing Program and directing the Secretary of the

Interior to review the program and to pause activities on the leases pending that review to

the extent allowed under law. Exec. Order No. 13990, Protecting Public Health and the

Environment and Restoring Science to Tackle the Climate Crisis, sec. 4(a), 86 Fed. Reg.

7,037, 7,039 (Jan. 25, 2021).

The Secretary of the Interior then reviewed the Leasing Program and issued her

findings in Secretarial Order No. 3401 on June 1, 2021. Ex. 5 (Secretarial Order No.

3401). In that order, the Secretary stated that she found multiple legal flaws with the

Leasing Program, including under NEPA for "failure to adequately analyze a reasonable

range of alternatives" and the Tax Act for "failure to properly interpret Section 20001."

*Id.* at 1. The Secretary then directed DOI to undertake a "new, comprehensive analysis of

the potential environmental impacts of the Program and address the identified legal

deficiencies." *Id.* She also imposed a temporary halt on all activities under the Leasing

Program — including on- and off-lease seismic — until the required analysis is complete. *Id.* at 2.

As a result of the identified legal flaws and the Secretary's Order, the Assistant Secretary of Land and Minerals Management suspended activities on the nine leases that same day. *See, e.g.*, Ex. 6 (Decision, Suspension of Operations and Production to Alaska Industrial Development and Export Authority). The lease-suspension letters reiterated the NEPA and Tax Act legal deficiencies, and identified that there may be additional legal failings, including the BLM's analysis of greenhouse gases under NEPA and subsistence evaluation under ANILCA section 810. *Id.* The lease-suspension letters also state that the supplemental NEPA analysis will "determine whether the leases should be reaffirmed, voided or subject to additional mitigation measures." *Id.* at 2. These actions are challenged by Plaintiffs in the present litigation.

As a result of DOI's actions, the *Gwich'in Steering Committee* lawsuit is stayed until BLM completes the supplemental environmental impact statement (SEIS) process and adopts a new Leasing Program that addresses the legal deficiencies, expected in mid-2023. Order re Defs.' and Plfs.' Unopposed Mot. to Stay Proceedings, *GSC v. Haaland* (ECF No. 86).

<center>ARGUMENT</center>

## I. MOVANT INTERVENORS MEET THE TEST TO INTERVENE AS A MATTER OF RIGHT.

A four-part test applies to determine whether intervention of right is warranted, which considers (1) the timeliness of the motion, (2) whether "the applicant has a significant protectable interest relating to the property or transaction" at issue, (3) whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest," and (4) whether "existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Courts are "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). As the Ninth Circuit explained, "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (internal quotation marks omitted); *see also Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967) (stating that Civil Rule 24 was "obviously designed to liberalize the right to intervene in federal actions"). Intervention should be granted to "as many apparently concerned persons as is compatible with efficiency and due process." *Portland Audubon*

*Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989) (cleaned up). The Movant Intervenors

satisfy all four factors to intervene as a matter of right.[1]

## A.    The Motion is Timely.

The timeliness of a motion to intervene is measured by considering "(1) the stage

of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other

parties; and (3) the reason for and length of the delay." *Alisal Water Corp.*, 370 F.3d at

921 (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,

309 F.3d 1113, 1119 (9th Cir. 2002)). A motion to intervene is timely when made at the

early stages of the proceedings. *Citizens for Balanced Use*, 647 F.3d at 897.

This motion is timely because it is made at the early stage of proceedings, before

service has been accomplished and prior to Defendants filing their answers. Defs.'

Response to Mot. to Intervene at 2 (ECF No. 20). The administrative record has yet to be

filed, no proceedings have been scheduled, and no substantive motions have been

decided. Accordingly, no parties will be prejudiced by intervention. *See Nw. Forest Res.*

*Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (noting that there was no prejudice

to the parties because the motion to intervene came before any substantive rulings were

made); *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)

(noting that the motion to intervene was timely because it was filed before the defendant

---

[1] This Court previously found that many of the same Movant Intervenors satisfied
the test to intervene in a prior case concerning oil and gas activities on the Coastal Plain.
Order Granting Motion to Intervene, *State of Alaska v. Jewell*, Case No. 3:14-cv-00048-
SLG, 2014 U.S. Dist. LEXIS 189442 (D. Alaska June 10, 2014).

Gwich'in Steering Comm. *et al.*'s Mot. to Intervene
*AIDEA v. Biden*, Case No. 3:21-cv-00245-SLG                                  Page 11

had filed its answer), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Because of the early filing, there has been no delay. In sum, the motion is timely, and the first factor satisfied.

### B.    Movant Intervenors Have A Protectable Interest in the Coastal Plain.

The requirement that an applicant show a protectable interest is met when "(1) the applicant asserts an interest that is protected under some law, and (2) there is a relationship between the applicant's legally protected interested and the plaintiff's claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (cleaned up) (citation omitted). "[N]o specific legal or equitable interest need be established." *Nw. Forest Res. Council*, 82 F.3d at 837 (citation omitted). The focus of this inquiry is on the "property or transaction that is the subject of the lawsuit," not "the underlying legal claim." *Wilderness Soc'y*, 630 F.3d at 1178. An applicant generally demonstrates a protectable interest if "it will suffer a practical impairment of its interests as a result of the pending litigation." *Cal. ex. rel. Lockyer v. United States* (*Lockyer*), 450 F.3d 436, 441 (9th Cir. 2006); *see also Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (explaining an interest is related to the action when "resolution of the plaintiff's claims actually will affect the applicant").

Movant Intervenors satisfy this requirement because they and their members have well-established and long-standing interests in preserving and enjoying the resources and values of the Coastal Plain for cultural, spiritual, recreational, and aesthetic purposes,

Gwich'in Steering Comm. *et al.*'s Mot. to Intervene
*AIDEA v. Biden*, Case No. 3:21-cv-00245-SLG                                    Page 12

which are threatened by AIDEA's leases and its proposed oil and gas activities. The Gwich'in Steering Committee is the unified voice for the Gwich'in Nation of Alaska Native Tribes and Canada First Nations for purposes of speaking out to protect the Coastal Plain. Demientieff Decl. at 10–11. The Gwich'in have an interest in the Coastal Plain for subsistence, cultural, and spiritual values and are deeply connected to the Porcupine Caribou Herd, which relies on the Coastal Plain. *Id.* at 6–10; *GSC* Order at 4–5. Other Movant Intervenors' staff and members, including Iñupiat staff and members, live in and visit the Coastal Plain for subsistence, recreation, economic interests (including guiding), wildlife viewing, and photography. Baraff Decl. at 12–13; Blackledge Decl. at 6–7; Haskett Decl. at 10; Itchoak Decl. at 17–19, 24; Lang Decl. at 3–7, 9–10; Mather Decl. at 3–5, 9; Mauer Decl. at 4–9; Miller Decl. at 9–10, 13; Nickas Decl. at 7–9; Raskin Decl. at 5, 10–11; Rider Decl. at 8–9; Ritzman Decl. at 6, 14–23; Schmitt Decl. at 5, 9; Thompson Decl. at 2–4, 9–13; Whitten Decl. at 4–5, 7–9; Whittington-Evans Decl. at 12, 19–24; Willms Decl. at 6–7; Yarnell Decl. at 4–16. Numerous laws protect these interests and protection of an area's wilderness values and wildlife and habitat are recognized as protected interests for purposes of intervention. *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008); *see, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 898 (determining intervenor-applicants had a protectable interest in the action "given their interest in preserving wilderness character" in the lands at issue); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding

group's interest in the preservation of birds and bird habitats satisfies the "protectable interest" factor).

Movant Intervenors have worked for years, and some for decades, to protect the Coastal Plain and the wildlife that depend on it from harmful oil and gas activities, and engaged in DOI's process to adopt the Leasing Program. Baraff Decl. at 4–12; Blackledge Decl. at 3–6, 9–10; Demientieff Decl. at 3–6, 11–13, 18–21; Haskett Decl. at 4–8; Itchoak Decl. at 4–8; Miller Decl. at 3–7; Nickas Decl. at 3–6; Raskin Decl. at 5–6; Rider Decl. at 3–5; Ritzman Decl. at 4–10; Schmitt Decl. at 6–8, 10–11, 17; Thompson Decl. at 4; Whitten Decl. at 3–4; Whittington-Evans Decl. at 3–6, 8–11; Willms Decl. at 4–6; Yarnell Decl. at 3–4. Additionally, this lawsuit challenges and seeks to enjoin actions taken to address legal deficiencies with the Leasing Program raised by Movant Intervenors in the related litigation. Baraff Decl. at 10, 15–18; Blackledge Decl. at 9–10, 13; Demientieff Decl. at 25; Haskett Decl. at 8, 13; Itchoak Decl. at 25–26, 28; Lang Decl. at 8–9; Mather Decl. at 5–6; Miller Decl. at 14–17; Nickas Decl. at 9, 13; Raskin Decl. at 7–10; Rider Decl. at 4, 11–13; Ritzman Decl. at 10–12, 14; Schmitt Decl. at 17–18, 20; Thompson Decl. at 12–13; Whittington-Evans Decl. at 11, 32, 34; Willms Decl. at 5–6, 9; *cf. Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."); *Nw. Forest Res. Council*, 82 F.3d at 837 (stating public interest groups may intervene when groups "were directly involved in the enactment of the law or

in the administrative proceedings out of which the litigation arose"). In sum, Movant Intervenors have protected interests in the Coastal Plain, satisfying the second intervention factor.

## C. A Ruling in Plaintiffs' Favor May Impair or Impede Movant Intervenors' Ability to Protect Their Interests.

The third factor is met if, as a practical matter, the action may impair or impede the applicant's ability to protect its interests. FED. R. CIV. P. 24(a)(2); FED. R. CIV. P. 24 advisory comm. notes. The second and third factors are closely related and if the second factor is met — that the applicant has a protectable interest — courts often find that the third factor is also satisfied. *See Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *see also City of Los Angeles*, 288 F.3d at 401 (noting third factor considers whether disposition of the action "'may' impair rights . . . rather than whether the [disposition] will 'necessarily' impair them"). In determining whether the action would impair an applicant's interests, courts look to the relief requested. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). It is irrelevant whether there are other forums for applicants to seek to protect their interests. *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010).

The interest-impairment factor is satisfied here. This case threatens the Movant Intervenors' longstanding interests in protecting the Coastal Plain from oil and gas

Gwich'in Steering Comm. *et al.*'s Mot. to Intervene
*AIDEA v. Biden*, Case No. 3:21-cv-00245-SLG                                    Page 15

activities. Oil and gas activities under the Leasing Program, including seismic exploration, would have direct and indirect impacts on the Coastal Plain and its resources, harming Movant Intervenors' interests. Baraff Decl. at 13–17; Blackledge Decl. at 6–11; Haskett Decl. at 7–13; Itchoak Decl. at 8–9, 11, 16, 20–27; Lang Decl. at 4, 6–11; Mather Decl. at 5–9; Mauer Decl. at 8–17; Miller Decl. at 11–16; Nickas Decl. at 8–12; Raskin Decl. at 7, 11–14; Rider Decl. at 6–12; Ritzman Decl. at 6, 8, 13–17, 19–26; Schmitt Decl. at 9–13, 16–19; Whitten Decl. at 5–9, 11; Whittington-Evans Decl. at 12–13, 15–18, 22–31; Willms Decl. at 6–10; Yarnell Decl. at 7, 9–22. The Gwich'in Steering Committee's cultural, spiritual, and subsistence interests in the Coastal Plain would be impacted by implementation of the Leasing Program and seismic exploration. Demientieff Decl. at 12–17, 19–24. Iñupiat persons who use the Coastal Plain and who are members and supporters of Movant Intervenor groups would also be harmed. Thompson Decl. at 4–13; Itchoak Decl. at 19. Movant Intervenors other members and supporters' use of the Coastal Plain and ability to protect it would also be impacted. Baraff Decl. at 15; Blackledge Decl. at 4–5, 8–9; Demientieff Decl. at 3, 16–17, 19–20; Haskett Decl. at 8; Itchoak Decl. at 25–26; Lang Decl. at 8–10; Mather Decl. at 6–9; Mauer Decl. at 8–13; Miller Decl. at 8, 12, 14–17; Nickas Decl. at 10–12; Raskin Decl. at 5, 8, 12–14; Rider Decl. at 3, 5, 10–12; Ritzman Decl. at 5, 9, 12–13; Schmitt Decl. at 10–11, 14–15; Thompson Decl. at 7–8, 11–13; Whittington-Evans Decl. at 16–18, 30–33; Willms Decl. at 4, 6–8; Yarnell Decl. at 21–22. Courts recognize that these impacts may

impair protected interests. *See, e.g., Glamis Imperial Corp. v. U.S. Dep't of the Interior*, 2001 WL 1704305, at *3 (D. D.C. Nov. 13, 2001) (holding Tribe demonstrated impact to interests in litigation brought to overturn a mining ban may damage lands used for religious and spiritual purposes); *Nat. Res. Def. Council v. Lujan*, 768 F. Supp. 870, 879 (D.D.C. 1991) (noting oil and gas development on Coastal Plain may "damage [its] wilderness, recreational, and subsistence values").

This case also implicates Movant Intervenors' pending lawsuit. Plaintiffs challenge the President's and DOI's actions to address the legal flaws with the Leasing Program. Plaintiffs' claims assert an interpretation of the Tax Act that, if adopted, could limit BLM's discretion regarding management of oil and gas activities, directly affecting the claims brought by Movant Intervenors' pending suit. Additionally, Plaintiffs seek declaratory judgment and a permanent injunction invalidating and vacating these actions, as well as an order directing DOI to "proceed with leasing and development," including seismic exploration. First Am. Compl. at 34; Compl. in Intervention for Declaratory J. and Injunctive Relief at 13–14. Plaintiffs' claims and requested relief have the potential to implicate Movant Intervenors' pending lawsuit over the Leasing Program. *GSC v. Haaland*, Case No. 3:20-cv-00204-SLG (D. Alaska).

It is important for Movant Intervenors to participate in this lawsuit to ensure their interests in protecting the Coastal Plain are protected. In sum, the third intervention factor is satisfied.

**D.    DOI May Not Adequately Represent Movant Intervenors' Interests.**

To satisfy the fourth factor, an applicant need only show that representation *may* be inadequate; "the burden of making this showing is minimal." *Sagebrush Rebellion*, 713 F.2d at 528. In considering the adequacy of representation, courts consider whether an existing party "will undoubtedly make all of the intervenor's arguments," whether the party "is capable and willing to make such arguments," and "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Id.* The "tactical similarity" of the parties does not ensure adequate representation; the court should instead compare the interests of the party with the interests of the applicant. *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (citation omitted); *see also Citizens for Balanced Use*, 647 F.3d at 899 (explaining that, while government and proposed intervenors "occupy the same posture in the litigation," this does not mean "the government's representation of the public interest . . . [is] identical to the individual parochial interest of the particular group" (cleaned up)). In evaluating this factor, the focus is on the "subject of the action, not just the particular issues before the court at the time of the motion." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (cleaned up). Questions about the adequacy of representation should be resolved "in favor of intervention." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

Movant Intervenors readily meet their minimal burden of showing the inadequacy of representation because their interests are not identical to Defendants. The Gwich'in Steering Committee represents the Gwich'in Nation's interests in protecting the Coastal Plain. Demientieff Decl. at 10–11. It is imperative that the Indigenous people who use and rely on the Coastal Plain be able to speak for themselves to protect their interests. Demientieff Decl. at 6, 17, 20–21, 24–25; Thompson Decl. at 4–5, 11; *cf. Arizona v. California*, 460 U.S. 605, 614–15 (1983) (expressing preference for Tribes to represent their own interests and allowing intervention).

Additionally, while the immediate objective of the Movant Intervenors is shared with Defendants, *i.e.*, upholding the President and DOI's actions regarding the Leasing Program, the Defendants' and Movant Intervenors' interests in the Coastal Plain are not identical. The Movant Intervenors' interests are in the preservation of the cultural, wilderness, and wildlife values of the Coastal Plain now and in the future. *See supra* Argument Part I.B. In contrast, DOI is a dual-mission agency. U.S. Dep't of the Interior, *About Interior*, https://www.doi.gov/about (stating mission as "protects and manages the Nation's natural resources and cultural heritage . . ."). Importantly, DOI takes the position that the Tax Act mandates the agency to adopt a leasing program and hold lease sales on the Coastal Plain, Tax Act § 20001, contrary to Movant Intervenors' longstanding interests in protecting the Coastal Plain. Baraff Decl. at 8, 17; Blackledge Decl. at 4–6, 12; Demientieff Decl. at 3; Haskett Decl. at 5, 9; Itchoak Decl. at 3–5, 27; Miller Decl. at

4, 16–17; Nickas Decl. at 3–5, 12; Raskin Decl. at 5, 9, 14; Rider Decl. at 5, 13; Ritzman Decl. at 5, 13; Schmitt Decl. at 19; Thompson Decl. at 4; Whitten Decl. at 3–4; Whittington-Evans Decl. at 4–5, 33; Willms Decl. at 4, 10; Yarnell Decl. at 3–4. DOI and BLM, therefore, have different and divergent interests from Movant Applicants and the presumption of adequate representation does not apply. *See Forest Conservation Council*, 66 F.3d at 1499 (noting government agency represents broader views than the "more narrow, parochial interests" of the applicants; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972) (noting there was "clear[ly] . . . sufficient doubt about the adequacy of representation" where relevant statute imposed a duty on government to represent multiple, non-identical interests); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (determining presumption of adequate representation was rebutted because the government's and applicants' interests are not "sufficiently congruent"); *WildEarth Guardians v. U.S. Forest. Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) ("[T]he intervenor's 'showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001))).

Additionally, Movant Intervenors are currently suing DOI and its agencies and officials over the Leasing Program. *GSC v. Haaland*, Case No. 3:20-cv-00204-SLG (D.

Alaska). Many have also been involved in past litigation concerning DOI's management of the Coastal Plain. *See Trustees for Alaska v. Hodel*, 806 F.2d 1378 (9th Cir. 1986) (indicating NAEC, Defenders of Wildlife, and The Wilderness Society brought suit against the Secretary of the Interior for his failure to provide public notice and comment on EIS prepared under ANILCA Section 1002); *Natural Res. Def. Council*, 768 F. Supp. at 874 & n.5 (The Wilderness Society, NAEC, Defenders of Wildlife, the Sierra Club, and Gwich'in Steering Committee brought suit challenging the adequacy of the legislative EIS completed under ANILCA Section 1002); *Trustees for Alaska v. Watt*, 524 F. Supp. 1303 (D. Alaska 1981) (NAEC (then named the Fairbanks Environmental Center) brought suit challenging the transfer of management authority for the Arctic Refuge under ANILCA Section 1002). This present and historical adversarial relationship demonstrates a divergence of interests between Movant Intervenors and Defendants.

Given Movant Intervenors distinct and longstanding goals of protecting the Coastal Plain, they will also likely offer different arguments than Defendants, and contribute unique perspectives to the arguments and proceedings in this case. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24. In sum, Defendants may not represent Movant Intervenors' interests and the fourth intervention factor is satisfied.

## II.    MOVANT INTERVENORS SHOULD BE GRANTED PERMISSIVE INTERVENTION.

If this Court determines that one or more of the Movant Intervenors do not satisfy the test for intervention as of right, this Court should grant them permissive intervention.

Civil Rule 24(b) permits intervention where an applicant's claim or defense poses questions of law or fact in common with the existing action and the application is timely and will not delay or prejudice the proceedings. FED. R. CIV. P. 24(b)(1)(B), (3); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).[2] A court has broad discretion in granting permissive intervention and, like intervention of right, permissive intervention should be liberally granted. *See* 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1904 (3d ed. 2007). The test for permissive intervention imposes an even lower burden on movants than the test for intervention as of right because it eliminates the requirements relating to interests and adequacy of representation. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108–09 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1177–78, 1180.

This motion is timely and intervention will not prejudice any parties or cause a delay in the proceedings. *See supra* Argument Part I.A. Additionally, the Movant Intervenors intend to respond directly to the Plaintiffs' challenges to the lawfulness of the President and DOI's actions regarding the Leasing Program — *i.e.*, they intend to assert common defenses of law and fact with the existing action. *See* [Proposed] Answer to

---

[2] The requirement that intervenors show an independent ground for jurisdiction does not apply to this motion because the Movant Intervenors are not bringing any new claims. FED. R. CIV. P. 24(b)(1); *Freedom from Religion Found., Inc.*, 644 F.3d at 844; *see* First Amend. Compl. at 7 & Compl. in Intervention for Declaratory J. and Injunctive Relief at 4 (asserting federal question jurisdiction); *see generally* [Proposed] Answer to First Amend. Compl. & [Proposed] Answer to State of Alaska's Complaint in Intervention for Declaratory J. and Injunctive Relief (not raising new claims).

First Amended Complaint at 25–30; [Proposed] Answer to State of Alaska's Complaint in Intervention for Declaratory J. and Injunctive Relief at 9–13. Accordingly, if the Court finds that any group does not satisfy the test for intervention of right, permissive intervention is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant Movant Intervenors' motion to intervene and direct that its Answers be filed.

Respectfully submitted this 14th of March, 2022.

<div style="margin-left: 40%;">

 s/ Brook Brisson
Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar No. 1705025)
Brian Litmans (AK Bar No. 0111068)
TRUSTEES FOR ALASKA

*Attorneys for Movant Intervenor-Defendants Gwich'in Steering Committee, Alaska Wilderness League, Alaska Wildlife Alliance, Canadian Parks & Wilderness Society-Yukon, Defenders of Wildlife, Environment America, Friends of Alaska National Wildlife Refuges, National Wildlife Federation, National Wildlife Refuge Association, Northern Alaska Environmental Center, Sierra Club, The Wilderness Society, and Wilderness Watch*

s/ Karimah Schoenhut (consent)

Karimah Schoenhut (*pro hac vice pending*)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM

</div>

*Attorney for Movant Intervenor-Defendant*
*Sierra Club*

Gwich'in Steering Comm. *et al.*'s Mot. to Intervene
*AIDEA v. Biden*, Case No. 3:21-cv-00245-SLG                    Page 24

## Certificate of Compliance

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because it contains 5,425 words, excluding the parts of the motion exempted by Local Civil Rule 7.4(a)(4).

s/ Brook Brisson
Brook Brisson

## Certificate of Service

I certify that on March 14, 2022, I caused a copy of the MOTION TO INTERVENE, LIST OF DOCUMENTS FILED IN SUPPORT, DECLARATIONS, EXHIBITS, [PROPOSED] ANSWER TO FIRST AMENDED COMPLAINT, [PROPOSED] ANSWER TO STATE OF ALASKA'S COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF, and [PROPOSED] ORDER, to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case.

s/ Brook Brisson
Brook Brisson