TREG R. TAYLOR
ATTORNEY GENERAL

Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov

Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
        gail.wurtzler@dgslaw.com
        mark.champoux@dgslaw.com
        nick.peppler@dgslaw.com

Attorneys for the State of Alaska

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, *et al.*, | ) ) ) | Case No. 3:21-cv-00245-SLG |
| Plaintiffs, | ) ) ) | **INTERVENOR-PLAINTIFF STATE OF ALASKA'S COMBINED OPPOSITION TO APPLICANTS' MOTIONS TO INTERVENE [ECF NOS. 23 & 24]** |
| and | ) ) ) | |
| STATE OF ALASKA, | ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| | ) | |

*AIDEA, et al. v. Biden, et al.*

v.                              )
                                )
JOSEPH R. BIDEN, JR. *et al.*,  )
                                )
          Defendants.           )
_____

Intervenor-Plaintiff, the State of Alaska ("the State"), by and through its undersigned counsel, submits this consolidated response in opposition to the Motions to Intervene filed by the Native Village of Venetie Tribal Government, Arctic Village Council, and Venetie Village Council's (collectively, "the Tribes") (ECF No. 23) and by the Gwich'in Steering Committee, Alaska Wilderness League, Alaska Wildlife Alliance, Canadian Parks & Wilderness Society–Yukon, Defenders of Wildlife, Environment America, Inc., Friends of Alaska National Wildlife Refuges, National Wildlife Federation, National Wildlife Refuge Association, Northern Alaska Environmental Center, Sierra Club, The Wilderness Society, and Wilderness Watch's (ECF No. 24) (collectively, "the nongovernmental organizations" or "NGOs") (all movants collectively, "Prospective Intervenors").[1]

## INTRODUCTION

Prospective Intervenors fail to meet the standard for intervention as of right under Federal Rule of Civil Procedure 24(a) because they have not demonstrated, and cannot demonstrate, that they have a significantly protectable interest in this litigation. Specifically, the Prospective Intervenors fail to explain how any of the interests they allege

_____

[1] Based on the overlap of interests and arguments asserted by Prospective Intervenors, Intervenor-Plaintiff addresses both motions in this consolidated opposition.

*AIDEA, et al. v. Biden, et al.*

relate to any of the claims in this case. This litigation concerns preparatory activities, such as archeological surveys, in advance of oil and gas exploration and development on the Arctic National Wildlife Refuge's ("ANWR") Coastal Plain. Many additional steps and further authorizations beyond these preparatory activities are necessary before the exploratory and development activities that the Prospective Intervenors seek to prevent can occur. Prospective Intervenors' concerns are more appropriately addressed in pending lawsuits where they challenge decisions that more decisively and directly have an impact or impairment on their alleged interests.[2]

Permissive intervention should also be denied for these same reasons. Prospective Intervenors' purported interests in avoiding any oil and gas activity have no common questions of law or fact with the preparatory activities at issue in this action.

Although the State opposes the Prospective Intervenors' intervention in this litigation, should the Court believe it may be useful to hear from Prospective Intervenors, the State would not oppose their participation as *amici curiae*. If the Court allows intervention over the State's objections, then the State requests that the Court require the Prospective Intervenors to avoid duplicative briefing and to adhere to the deadlines established in the existing Scheduling Order (ECF No. 33).

## BACKGROUND

This lawsuit challenges executive actions that have stopped all preparatory activities

---

[2] *Gwich'in Steering Comm. v. Haaland (GSC v. Haaland)*, No. 3:20-cv-00204-SLG (D. Alaska); *Native Village of Venetie Tribal Gov't v. Haaland*, No. 3:20-cv-00223-SLG (D. Alaska).

for lawful oil and gas development in Alaska's Coastal Plain within ANWR in defiance Congress's express mandate that such activities go forward. ANWR's origins date to 1960, when Public Land Order 2214 established the "Arctic National Wildlife Range." Public Land Order 2214, Establishing the Arctic National Wildlife Range (Dec. 6, 1960). In 1980, the Alaska National Interest Lands Conservation Act ("ANILCA") expanded the Range and renamed it a "Refuge." ANILCA, Pub. L. No. 96-487, 94 Stat. 2371 (1980).[3] Section 1002 of ANILCA expressly directs the Secretary of the Interior to carry out an oil and gas exploration program on ANWR's Coastal Plain (sometimes called the "1002 Area" or the "Coastal Plain"). ANILCA § 1002(c). ANILCA, as enacted, prohibits the leasing and development of oil and gas in the 1002 Area "until authorized by an Act of Congress." *Id.* § 1003.

In 2017, Congress provided that authorization in the Tax Cuts and Jobs Act ("Tax Act"), Public Law No. 115-97, which includes a stand-alone title expressly directing the Secretary of the Interior to "establish and administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain." Pub. L. No. 115-97, § 20001(b)(2)(A), 131 Stat. 2054, 2236 (2018). The Tax Act also removes the prohibition on oil and gas production in the 1002 Area and adds another express "purpose" to ANWR: "to provide for an oil and gas program on the Coastal Plain." § 20001(b)(1), (b)(2)(B)(v), 131 Stat. at 2236. Further, the Tax Act requires the

---

[3] ANILCA is codified in various titles of the U.S. Code related to the subject matter or department addressed. The ANILCA sections pertinent to oil and gas leasing in the 1002 Area are sections 303 and 1002, et seq., codified at 16 U.S.C. § 668dd (note) and 16 U.S.C. § 3142, et seq. respectively.

*AIDEA, et al. v. Biden, et al.*

Case No. 3:21-cv-00245-SLG
Page 4 of 17

Secretary of the Interior to "issue any rights-of-way or easements across the Coastal Plain for the exploration, development, production, or transportation necessary to carry out" Section 20001 of the Tax Act. § 20001(c)(2), 131 Stat. at 2237.

Pursuant to the requirements of the Tax Act, the Bureau of Land Management ("BLM") proceeded to establish the Leasing Program. After preparing a final environmental impact statement pursuant to the National Environmental Policy Act ("NEPA") for the Leasing Program, BLM issued its record of decision approving the Leasing Program on August 17, 2020.

On August 24, 2020, the NGOs filed a lawsuit seeking compliance with NEPA and other statutes related to the 2020 Leasing Program. *See Gwich'in Steering Comm. v. Haaland (GSC v. Haaland)*, No. 3:20-cv-00204-SLG (D. Alaska). Likewise, on September 9, 2020, the Tribes filed a lawsuit seeking compliance with NEPA and the National Historic Preservation Act ("NHPA"), among other statutes, related to the 2020 Leasing Program. *See Native Village of Venetie Tribal Gov't v. Haaland*, No. 3:20-cv-00223-SLG (D. Alaska). Both lawsuits are stayed pending BLM's own supplemental review of the 2020 Leasing Program. *Id.* ECF No. 77; *GSC v. Haaland*, No. 3:20-cv-00204-SLG, ECF No. 86.

In January 2021, BLM conducted the first of at least two Coastal Plain lease sales required by the Tax Act. The Alaska Industrial Development and Export Authority ("AIDEA") was one of the successful bidders and secured lease agreements for seven tracts (the "Coastal Plain Leases"). Leases issued under the Leasing Program provide no immediate rights to conduct ground-disturbing activities, and future "on-the-ground

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
                                                                   Page 5 of 17
Case 3:21-cv-00245-SLG   Document 35   Filed 03/28/22   Page 5 of 17

activities"—namely exploration and development—require additional agency approvals and "further NEPA analysis." *Native Village of Venetie Tribal Gov't v. Haaland*, No. 3:20-cv-00223-SLG (D. Alaska) (ECF No. 51-7 at 12, Leasing Program's Record of Decision (2020)).

On January 20, 2021 in his first day in office, President Biden issued an executive order directing that "[i]n light of the alleged legal deficiencies underlying the program, . . . the Secretary of the Interior shall . . . place a temporary moratorium on all activities of the Federal Government relating to the implementation of the Coastal Plain Oil and Gas Leasing Program, as established by the Record of Decision signed August 17, 2020, in the Arctic National Wildlife Refuge." Exec. Order No. 13990, § 4(a), 86 Fed. Reg. 7,037 (Jan. 25, 2021). Similarly, on June 1, 2021, the Secretary of the Interior issued Order No. 3401 bringing a halt to "all Activities in the Arctic National Wildlife Refuge Relating to the Coastal Plain Oil and Gas Leasing Program."

In August 2021, BLM notified multiple contractors for AIDEA that BLM would delay the processing of contractors' permit applications to complete archeological surveys on AIDEA's Coastal Plain leases until a supplemental environmental impact statement process is complete. (ECF No. 34 ¶ 100). Also in August 2021, BLM published in the Federal Register a Notice of Intent to Prepare a Supplemental Environmental Impact Statement for the Coastal Plain Oil and Gas Leasing Program. Notice of Intent, 86 Fed. Reg. 41,989 (Aug. 4, 2021).

On November 4, 2021, the AIDEA, North Slope Borough, and Arctic Slope Regional Corporation initiated the present litigation challenging Executive Order

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG

No. 13990 and Secretarial Order No. 3401, and the State intervened as a plaintiff. (ECF Nos. 1, 9, 21, 34). This litigation seeks to allow AIDEA to proceed with leasing and development on the Coastal Plain, including preparatory activities such as archeological surveys. The litigation also seeks to allow the BLM to move forward in issuing authorizations for activities to carry out the Leasing Program, including rights-of-way or easements.

The Tribes and NGOs filed their respective Motions to Intervene on March 14, 2022. (ECF Nos. 23, 24). The State reserved its position on the Motions until it had the opportunity to review them. After consideration of the Motions, the State opposes the Tribes' and ENGOs' intervention and respectfully requests that the Court deny the Motions.

## ARGUMENT

The Tribes and NGOs cannot satisfy the requirements for intervention as defendants in this matter. Their entire argument for doing so relies on their stated concerns related to "their relationship to the Coastal Plain . . . their well-established and extremely long-standing subsistence and cultural connections to the Coastal Plain . . . ," (ECF No. 23-1 at 7), "preserving and enjoying the resources and values of the Coastal Plain . . . subsistence, recreation, economic interests (including guiding), wildlife viewing, and photography . . ." (ECF No. 24 at 12–13). Such concerns, however, bear no relationship to the preparatory activities at issue in this litigation because, if preparatory activities proceed, no harm will occur to the Proposed Intervenors' asserted interests. Further, any exploration and development activities will be authorized in separate decisions. Ultimately, the Proposed

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG
                                                                   Page 7 of 17
Case 3:21-cv-00245-SLG   Document 35   Filed 03/28/22   Page 7 of 17

Intervenors seek to prevent development of the Coastal Plain leases—but the Proposed Intervenors are maintaining separate lawsuits to do just that, which are the more appropriate forums for the Proposed Intervenors to assert their alleged interests. For these reasons, the Court should deny the Tribes' and NGOs' requested interventions.

## I. THE COURT SHOULD DENY PROSPECTIVE INTERVENORS' INTERVENTION OF RIGHT.

Neither the Tribes nor the NGOs satisfy Rule 24(a)'s intervention as of right requirements. "A petitioner seeking intervention of right under Federal Rule of Civil Procedure Rule 24(a) 'must (1) make a timely motion, (2) claim a significantly protectable interest in the property that is the subject of the action, (3) demonstrate an impairment of its ability to protect that interest, and (4) prove that the interest is inadequately represented by the parties to the action.'" *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002) (quoting *Montana v. U.S. Env't Prot. Agency*, 137 F.3d 1135, 1141 (9th Cir. 1998)). Each of these factors must be met. *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Here, the Tribes and NGOs fail to claim a significantly protectable interest in this action and fail to demonstrate an impairment of their ability to protect that interest.

### A. The Prospective Intervenors fail to assert a protectable interest.

Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a "practical, threshold inquiry," and "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd*, 64 F.3d 1266 (9th Cir. 1995). The movant must, however, demonstrate a "significantly protectable interest" in the lawsuit to merit intervention. *Nw. Forest Res. Council v.*

*Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995)).

To demonstrate this significantly protectable interest, a prospective intervenor must establish that (1) "the interest [asserted] is protectable under some law," and (2) there is a "relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Forest Conservation Council*, 66 F.3d at 1494); *see Montana*, 137 F.3d at 1141–42 (holding that the proposed intervenors lacked a "significant protectable interest," because they did not have the type of permit that was the subject of the plaintiffs' action); *Greene*, 996 F.2d at 976–78 (holding that an applicant lacked a "significant protectable interest" in an action when the resolution of the plaintiff's claims would not affect the applicant directly). Here, the Prospective Intervenors cannot meet the second prong of this test.

The Prospective Intervenors' alleged interests simply have no relationship to the Plaintiffs' and Plaintiff-Intervenor's claims. The Prospective Intervenors identify concerns related to "preserving and enjoying the resources and values of the Coastal Plain . . . ," and "subsistence, recreation, economic interests (including guiding), wildlife viewing, and photography . . .." (ECF No. 24 at 12–13; *see* ECF No. 23 at 7 (asserting the same regarding cultural subsistence interests in the Coastal Plain)). The Prospective Intervenors, however, have not explained how preparatory activities such as archeological surveys will affect their preservation and enjoyment of the Coastal Plain, their subsistence, recreation, economic interests, cultural interests, or their ability to view and take photos. In fact, preparatory activities will have no effect on these alleged interests. Indeed, the archeological surveys at issue in the litigation do not require any oil and gas lease or right-

of-way. *See generally, e.g.*, 43 C.F.R. § 2801.5 (including surveys in the definition of "casual use" activities that do not require rights-of-way under the Federal Land Policy and Management Act). Further, archeological surveys are a non-disruptive ground activity. *See id.*

The Prospective Intervenors essentially view the preparatory activities as an unwanted step toward their perceived ultimate harm—development of the Coastal Plain leases. But Prospective Intervenors cannot draw a straight line between the preparatory activities and development of the Coastal Plain leases. Any authorizations of oil and gas exploration and development activities, such as seismic activity, rights-of-way, and easements, must be authorized via separate decisions that are subject to future challenge. *See* 43 C.F.R. § 3162.3-1 (summarizing drilling permit applications, plans, review, and challenges for onshore oil and gas operations); 43 C.F.R. subpart 3152 (describing processes for onshore oil and gas geophysical exploration process related to seismic activity in Alaska); *e.g.*, *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 250 F. Supp. 3d 1068, 1077 (D. Utah 2017) (describing process for challenging BLM's decision-making on drilling permits); *see generally* 5 U.S.C. § 704. Because Prospective Intervenors will have the opportunity to seek review of these authorizations, they have no need to participate in the present case.

For these reasons, the Prospective Intervenors have failed to establish any "significantly protectable interest" that would allow them to intervene as of right under Rule 24(a).

*AIDEA, et al. v. Biden, et al.*                                      Case No. 3:21-cv-00245-SLG
                                                                      Page 10 of 17
Case 3:21-cv-00245-SLG   Document 35   Filed 03/28/22   Page 10 of 17

**B.    Disposition of this action will not impair the Prospective Intervenors' ability to protect their claimed interest.**

Not only do Prospective Intervenors lack a protectable interest in this case, this case will not impair the Prospective Intervenors' ability to protect their alleged interests. The Ninth Circuit has held that a prospective intervenors' interests will not be impaired if the proposed intervenor has "other means" to protect them. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (holding that that litigation would not impair the creditor's interests because the district court had set up a separate process for approving claims against the debtor that was sufficient to protect the proposed intervenor's interest.). Here, the Prospective Intervenors have two independent routes to protect their interests.

First, the Prospective Intervenors' separate lawsuits in *GSC v. Haaland* and *Native Village of Venetie Tribal Governments v. Haaland* provide "other means" to protect their interests. In their pending lawsuits, the Prospective Intervenors seek review of the Department of the Interior's ("the Department's") compliance with certain environmental acts, including NEPA, the NHPA, and ANILCA, when authorizing leasing in the Coastal Plain. *See GSC v. Haaland*, No. 3:20-cv-00204-SLG (D. Alaska) (ECF No. 19); *Native Village of Venetie Tribal Gov't v. Haaland*, No., 3:20-cv-00223-SLG (D. Alaska) (ECF No. 1). In these separate lawsuits, Prospective Intervenors seek (i) a declaration that the Department and BLM violated various environmental laws which cannot serve as the basis for any lease sales or new leases, (ii) an order vacating agency approval related to the Coastal Plains leases, and (iii) an injunction prohibiting BLM from authorizing any activity under the Coastal Plain leasing program. *Id.* If the Prospective Intervenors obtain the relief

they seek, they will prevent their ultimate perceived harm of developing oil and gas on the Coastal Plain. Thus, their parallel lawsuits better protect the Prospective Intervenors' asserted interests.

Second, as explained above, the permitting process required provides "other means" for the Prospective Intervenors to protect their interests in preventing development on the Coastal Plain. Any activities related to exploration and development, including seismic activities, must be separately authorized through permits or grants of rights-of-way. The Prospective Intervenors will have the opportunity to challenge any such authorizations and grants, once issued. *See* 5 U.S.C. § 702. For these reasons, the Prospective Intervenors have other means by which they should more appropriately challenge any authorizations with which they disagree.

Finally, the Prospective Intervenors ignore that their interests actually align with the claims in this case. In their concurrent lawsuits, the Prospective Intervenors assert that NEPA requires agencies to conduct surveys and assert an interest in compliance with NEPA and the NHPA. *See GSC v. Haaland*, No. 3:20-cv-00204-SLG (D. Alaska) (ECF No. 19 ¶¶ 148–159, 203–209) (alleging violations of NEPA); *Native Village of Venetie Tribal Gov't v. Haaland*, No. 3:20-cv-00223-SLG (D. Alaska) (ECF No. 1) ¶¶ 131–175, 176–182, 220–234, 247–257 (alleging violations of NEPA and NHPA). The archaeological surveys at issue here yield information and data about the resources with which the Prospective Intervenors are concerned. Further, the preparatory activities at issue assist BLM with compliance with NEPA and the NHPA that is necessary before exploration and

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG
                                                                    Page 12 of 17
Case 3:21-cv-00245-SLG   Document 35   Filed 03/28/22   Page 12 of 17

development activities can proceed. Accordingly, Prospective Intervenors cannot claim that the asserted claims adversely impact their interests.

In sum, the Prospective Intervenors' impairment is speculative at best. The Prospective Intervenors falsely assert that the Coastal Plain will be disturbed for the benefit of their members if relief is granted to Plaintiff or Intervenor-Plaintiff. Instead, the relief Plaintiffs and Intervenor-Plaintiff seek allows for the collection of information and data of resources of concern to the Prospective Intervenors. Moreover, the relief Plaintiffs and Intervenor-Plaintiff seek promotes compliance with statutes designed to ensure responsible exploration and development of the Coastal Plain. Accordingly, the Prospective Intervenors have not demonstrated a significantly protectable interest that will be impaired by this litigation. The Court should not grant intervention of right.

## II.    THE COURT SHOULD DENY PERMISSIVE INTERVENTION.

A court may grant intervention under Fed. R. Civ. P. 24(b) where: (1) the motion is timely, and (2) the applicant's claim or defense and the main action have a question of law or fact in common. *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993) (citing *Venegas v. Skaggs,* 867 F.2d 527, 529 (9th Cir. 1989)). The Prospective Intervenors cannot demonstrate any such "common question." While their asserted interests relate generally to the ultimate potential development of the Coastal Plain, the specific questions to be litigated in this case—namely, regarding whether non-disruptive preparatory activities should occur and whether the President's and Department's orders are lawful—bear no substantive connection to Prospective Intervenors' more generalized interests.

Case 3:21-cv-00245-SLG   Document 35   Filed 03/28/22   Page 13 of 17

Should this Court believe it may be useful to hear from Prospective Intervenors on the merits of Plaintiffs' claims, the State would not oppose the Prospective Intervenors' participation as *amicus curiae* at appropriate junctures in the case. If this Court allows the Prospective Intervenors to intervene over the State's objection, the State requests that the Court use its discretion to limit these interventions to avoid duplicative litigation and a waste of judicial resources. "The district court's discretion . . . under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (quoting *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974)). The State respectfully requests that the Court order that the Prospective Intervenors cannot file duplicative motions or oppositions and cannot raise arguments raised by any other party. Further, the State requests that the Court order that the Prospective Intervenors adhere to the deadlines established in the existing Scheduling Order (ECF No. 33).

## CONCLUSION

The Prospective Intervenors have no significant, legally protectable interest that is implicated by or threatened in the pending litigation. For these reasons, the Prospective Intervenors are not entitled to intervention as of right or permissively, and their Motions should be DENIED.

DATED: March 28, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL

By:     */s/ Ronald W. Opsahl*
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email:  ron.opsahl@alaska.gov

By:     */s/ Kathleen C. Schroder*
Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
      gail.wurtzler@dgslaw.com
      mark.champoux@dgslaw.com
      nick.peppler@dgslaw.com

Attorneys for the State of Alaska

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 3,330 words.

*/s/ Kathleen C. Schroder*

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
Page 16 of 17
Case 3:21-cv-00245-SLG   Document 35   Filed 03/28/22   Page 16 of 17

**CERTIFICATE OF SERVICE**

I certify that on **March 28, 2022**, the foregoing document was served electronically on all parties listed on the CM/ECF system.

*/s/ Kathleen C. Schroder*