TREG TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov

Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
       gail.wurtzler@dgslaw.com
       mark.champoux@dgslaw.com
       nick.peppler@dgslaw.com

*Attorneys for the State of Alaska*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, *et al.*, <br><br> Plaintiffs, <br><br> and <br><br> STATE OF ALASKA, <br><br> Intervenor-Plaintiff, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 3:21-cv-00245-SLG

**STATE OF ALASKA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*AIDEA, et al. v. Biden, et al.*
State of Alaska's Reply in Support of
Motion for Summary Judgment

Case No. 3:21-cv-00245-SLG
Page 1 of 21

Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 1 of 21

```
                                          )
            v.                            )
                                          )
JOSEPH R. BIDEN, JR. *et al.*,            )
                                          )
            Defendants,                   )
      and                                 )
                                          )
NATIVE VILLAGE OF VENETIE                 )
TRIBAL GOVERNMENT, *et al.*,              )
                                          )
            Intervenor-Defendants.        )
                                          )
```

      In their Response, the Federal Defendants barely acknowledge the State's Motion for Summary Judgment, let alone substantively respond to the State's arguments. The Federal Defendants instead focus almost entirely on the arguments set forth in the Motion for Summary Judgment filed by Lessee Plaintiffs while addressing the State's 34-page Motion in only two footnotes. *See* Defs.' Resp. in Opp'n to Pls.' Mots. for Summ. J., ECF No. 63 ("Fed. Defs.' Resp.") at 25 n.9 & 33 n.11. The Defendant-Intervenors similarly aim their responses almost entirely at Lessee Plaintiffs' Motion for Summary Judgment while ignoring the State's distinct arguments or conflating them with separate arguments raised by Lessee Plaintiffs. *See* Intervenor-Defs. Native Village of Venetie Tribal Government, Arctic Village Council, and Venetie Village Council's Resp. in Opp'n to Mots. for Summ. J., ECF No. 65 ("Tribes' Resp.") at 11 n. 43, 13 n.50, 14–15, 18 n.75, 19; Intervenor-Defs. Gwich'in Steering Committee et al.'s Resp. in Opp'n to Mots. for Summ. J., ECF No. 64 ("Gwich'in Steering Comm.'s Resp.") at 12 n.55, 13, 17, 20–25. Like the

*AIDEA, et al. v. Biden, et al.*                       Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                          Page 2 of 21

Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 2 of 21

Federal Defendants, Gwich'in Steering Committee offers its only detailed response to the State's arguments in a footnote. Gwich'in Steering Comm.'s Resp. at 12 n.55.

It is telling that the Federal Defendants and Defendant-Intervenors prefer to ignore or conflate the State's straightforward and specific challenges to the Moratorium that are based on long-established administrative law principles. Contrary to the Federal Defendants' claim that "[t]he ROD remains in effect," Fed. Defs.' Resp. at 25 n.9, the Moratorium in fact rejects, suspends, and rescinds the Record of Decision ("ROD"), and neither Federal Defendants nor Defendant-Intervenors identify a statutory basis authorizing such action. Furthermore, the Federal Defendants and Defendant-Intervenors do not and cannot legitimize the Moratorium's invalid purpose. Instead, the Federal Defendants and Defendant-Intervenors incorrectly attempt to recast the State's challenge to the Moratorium as a challenge to the Secretary's decision to prepare supplemental analysis under the National Environmental Policy Act ("NEPA"), when the two decisions in fact are distinct and when the State does not challenge the latter. The Federal Defendants' and Defendant-Intervenors' failure to meaningfully defend the administrative actions taken by the Secretary and Bureau of Land Management ("BLM") to implement the Moratorium demonstrates that those actions were arbitrary, capricious, not in accordance with law, and in excess of authority. Accordingly, the Moratorium is unlawful and must be set aside.

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                        Page 3 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 3 of 21

## I.    The State's Challenges Are Properly Before the Court.

The State has challenged both Section 4(a) of the Executive Order[1] and the agency actions taken in response to it, including the Secretarial Order, the Suspension, and BLM's cessation of all permitting in furtherance of lease development (collectively, the "Administrative Response to the Executive Order"), and has asked this Court to declare all such actions unlawful and set them aside.  *See* State Compl. ¶¶ 27, 29–30, 48, 58, 62–65, Prayer for Relief; State Mot. for Summ. J. at 9–13.  The Federal Defendants contest the State's and Lessee Plaintiffs' challenges to the Executive Order, including on standing grounds.  *See* Fed. Defs.' Resp. at 14–19.  Lessee Plaintiffs' reply brief addresses this argument and demonstrates that the Court may properly hear the challenge to the Executive Order; the State adopts Lessee Plaintiffs' arguments in reply and incorporates them as its own.

The Federal Defendants, however, concede that the State's and Lessee Plaintiffs' challenges to the Administrative Response to the Executive Order are appropriately before this Court.  *See id.* at 18 ("It is the Secretarial Order and suspension decisions that have any relevant effect, not the Executive Order."); *accord* 5 U.S.C. § 706 (subjecting agency actions to judicial review); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770–71 (9th Cir. 2018) (holding that agency actions that implement and incorporate presidential proclamations are reviewable under the Administrative Procedure Act).  Accordingly, no party disputes that the Court may consider and rule on the State's arguments set forth in its

---

[1] All capitalized terms have the definitions set forth in the State's Motion for Summary Judgment unless otherwise noted.

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                         Page 4 of 21
Case 3:21-cv-00245-SLG       Document 66       Filed 03/20/23       Page 4 of 21

Motion for Summary Judgment, which focus on the Administrative Response to the Moratorium.

## II. The Federal Defendants and Defendant-Intervenors Offer No Meaningful Response to the State's Motion for Summary Judgment.

The Federal Defendants and their intervenor supporters only briefly acknowledge the State's merits arguments applying the Administrative Procedure Act ("APA") to the Federal Defendants' conduct. And, what little argument they make in response to the State's Motion relies on mischaracterizations of the State's Motion and misapplications of the statutes and case law that are binding on this Court.

### A. The Moratorium Arbitrarily Rejects, Suspends, and Rescinds the ROD.

In a single conclusory sentence, the Federal Defendants dispute the State's contention that the Moratorium functionally rejects, suspends, and rescinds the ROD. *See* State Mot. for Summ. J. at 20–23. The Federal Defendants assert, "The ROD remains in effect." Fed. Defs.' Resp. at 25 n.9. This statement contradicts the ROD and, further, sidesteps the State's objections.

The ROD "approves a program to carry out . . . the statutory directive" of Section 20001 of the Tax Act. AR3145. The ROD implements the Tax Act's requirement that the Secretary "establish and administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain[.]" AR3147. It determines "where and under what terms and conditions leasing may occur" and "provides guidance for potential future permitting purposes[.]" *Id.*; AR3148.

*AIDEA, et al. v. Biden, et al.*                     Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                              Page 5 of 21
        Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 5 of 21

The Moratorium, however, prevents the Secretary from "administer[ing] a competitive oil and gas leasing program" as required by the Tax Act and approved by the ROD. The Secretarial Order halted "all Department activities related to the Program" and suspended the leases. AR3362; AR3368. It particularly directed that the Department of the Interior ("DOI") "shall not take any action to authorize any aspect of the Program, including, but not limited to, any leasing, exploration, development, production, or transportation, and shall not process any pending or future applications for such activities." AR3363. The Secretary also is not issuing rights-of-way or easements necessary to carry out the Program, a fact that the Federal Defendants do not dispute. *See, e.g.*, Lessee Plaintiffs' Mot. for Summ. J., ECF No. 60, at 21.

As such, the ROD has been effectively suspended and rescinded.[2] But the Federal Defendants casually suggest, without authority, that it is premature to determine the legality of that suspension and rescission. *See* Fed. Defs.' Resp. at 25 n.9. Instead, the Federal Defendants invite the State and the Court to wait and see whether BLM will modify or rescind the ROD "following the supplemental review process" and then determine if BLM's decision at that point should be challenged. *See id.* But the Federal Defendants miss the point. Whatever decision BLM eventually makes *after* the supplemental review process is distinct from the decision DOI and BLM already made to suspend and effectively rescind the ROD *before* that supplemental review even began and without the benefit of

---

[2] Even Gwich'in Steering Committee recognizes that the ROD has been suspended and rescinded by arguing that DOI should not be forced to implement a document that DOI perceives as legally flawed. *See* Gwich'in Steering Comm.'s Resp. at 17–18.

*AIDEA, et al. v. Biden, et al.*                                        Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                                    Page 6 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 6 of 21

such review. The State challenges the legality of the decision already made as lacking any statutory basis.

Because the ROD is a final agency action issued pursuant to statutory directive and consistent with statutory processes, DOI needs to have a separate statutory basis to suddenly suspend or revoke the ROD, even if it does so to engage in a "supplemental review process."[3] *See* State's Mot. for Summ. J. at 21–23. And even if DOI has authority to engage in the supplemental review, DOI must also have authority to suspend or revoke the ROD prior to, and without the benefit of, that supplemental review. *See id.* As discussed in the State's Motion, neither the APA nor NEPA—nor any other statute— provide DOI such authority to suddenly set aside a ROD. *See id.*

Perhaps recognizing that the Federal Defendants failed to identify appropriate statutory authority for suspending or rescinding the ROD, the Intervenor Tribes argue that "agencies have inherent authority to reconsider their decisions and address legal errors where Congress has not otherwise directed the agency." Tribes' Resp. at 14. Notably, the

---

[3] The Ninth Circuit recently reinforced that statutory authority is necessary to revoke an agency action. *See Illinois v. Wheeler (In re Clean Water Act Rulemaking)*, 60 F.4th 583 (9th Cir. 2023). In holding that courts may not vacate an agency action absent a finding that the agency acted unlawfully, the court set forth reasoning that directly informs the issue here. The court first recited the Supreme Court's requirement that "agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Id.* at 595 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015)). The court then explained that vacatur without a finding of unlawful agency action "would essentially turn courts into the accomplices of agencies seeking to avoid this statutory requirement" because "it would allow agencies to repeal a rule merely by requesting a remand with vacatur in court." *Id.* Here, by unilaterally revoking and rescinding the ROD, the Moratorium accomplishes precisely what this Court lacks the authority to do.

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                          Page 7 of 21
              Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 7 of 21

Federal Defendants themselves do not say they are relying on any such inherent authority. Moreover, the very case the Intervenor Tribes cite for this proposition actually undermines their argument. In *Ivy Sports Medicine, LLC v. Burwell*, the D.C. Circuit first observed that, in some instances, "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions[.]" 767 F.3d 81, 86 (D.C. Cir. 2014). The Court further recognized, however, that "any inherent reconsideration authority *does not apply* in cases where Congress has spoken," such as "when Congress has provided a mechanism capable of rectifying mistaken actions." *Id.* (emphasis added). The Court went on to reject the Food and Drug Administration's ("FDA") invocation of inherent authority to rescind a medical device classification decision because, as the Court recognized, Congress has provided a procedural mechanism for the FDA to reclassify medical devices. *See id.* at 87 ("In short, because FDA concededly could have used [the reclassification procedure], it could not rely on a claimed inherent reconsideration authority to short-circuit that statutory process and revoke its prior . . . determination to achieve that same result.").

The same reasoning applies here. NEPA, as enacted and as further implemented by regulation, provides a detailed process that federal agencies can and do use to modify or replace an existing ROD—a process that involves input by the public and other stakeholders. *See* 42 U.S.C. § 4332(C); 40 C.F.R. §§ 1501–06. Indeed, this is the very process that Federal Defendants say they are undertaking at this time—an admission of the process' clear applicability here. But, as the D.C. Circuit held in *Ivy Sports Medicine*, the Federal Defendants may not "short-circuit" that process and simply "revoke [BLM's] prior

*AIDEA, et al. v. Biden, et al.*                                            Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                              Page 8 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 8 of 21

. . . determination." 767 F.3d at 87. If Federal Defendants wish to modify or replace the ROD, they must *first* engage in all processes required by NEPA and the APA. That they are undertaking those processes now does not rectify their unlawful suspension of the ROD. Indeed, courts have long recognized that an agency cannot justify the legality of its actions by engaging in required processes *after* the agency has decided to take the action. *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 683 F.2d 752, 768 (3d Cir. 1982). Because Federal Defendants have neither express nor inherent authority to unilaterally and suddenly suspend or revoke a ROD, the actions taken to implement the Moratorium are in excess of statutory authority and must be set aside.

### B. The Moratorium Must Be Set Aside Because It Is Premised on an Invalid Purpose.

The Federal Defendants and Defendant-Intervenors offer little response to the State's position that the Moratorium must be set aside as arbitrary, capricious, not in accordance with law, and in excess of statutory authority because it is undisputedly premised on the invalid purpose of considering whether to affirm or void the Coastal Plain leases. In fact, the Federal Defendants do not contest the State's contention that cancellation of the leases would violate the Tax Act. Instead, the Federal Defendants argue that the State's contention that cancellation of the leases would violate the Tax Act is "premature" because BLM has not cancelled the leases. *See* Fed. Defs.' Resp. at 25 n.9. Additionally, the Federal Defendants and Defendant-Intervenors assert that the Secretary may cancel the leases because of deficient NEPA analysis. Both arguments fail.

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                    Page 9 of 21
Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 9 of 21

1. The State's Objections to the Justifications for the Moratorium Are Not Premature.

Contrary to the Federal Defendants' assertion, the State's contention that DOI lacks authority to cancel the leases is not "premature." *See* Fed. Defs.' Resp. at 25 n.9. DOI has justified the Moratorium as necessary to allow it to evaluate whether to cancel the leases. *See* AR3365; AR3404. Thus, the question before the Court is whether this justification is reasonable. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding that the APA requires an agency to "articulate a satisfactory explanation for its action"). It is not. DOI cannot cancel the leases because cancellation would violate the Tax Act—a fact that the Federal Defendants do not dispute. *See* State's Mot. for Summ. J. at 25.

The Moratorium's legally flawed purpose renders the Moratorium arbitrary and capricious. "Agency action that 'stands on a faulty legal premise and [lacks] adequate rationale' is arbitrary and capricious." *Gomez v. Trump*, 485 F. Supp. 3d 145, 194 (quoting *Prill v. NLRB*, 755 F.2d 841, 948 (D.C. Cir. 1985)); *see also Seaburn, Inc. v. U.S. Envtl. Prot. Agency*, 712 F. Supp. 218, 221–22 (D.D.C. 1989) (evaluating whether agency decision to suspend permit review was based on correct understanding of agency's statutory authority); *see generally Secs. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (recognizing that an agency decision "may not stand if the agency has misconceived the law"); *Port of Portland v. United States*, 408 U.S. 811, 842 (1972) (stating that a court's "appellate function in administrative cases is limited to considering whether the announced grounds for the agency decision comport with the applicable legal

*AIDEA, et al. v. Biden, et al.*                                       Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                           Page 10 of 21
Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 10 of 21

principles"). Here, the fact that DOI has not cancelled the leases is irrelevant to the fact that the Moratorium's purpose is legally invalid. Because cancellation of the leases would violate the Tax Act, the Moratorium is arbitrary, capricious, not in accordance with law, and in excess of statutory authority.

### 2. DOI Lacks Authority to Cancel the Leases Because of Deficient NEPA Analysis.

The Federal Defendants and Defendant-Intervenors defend the Moratorium's purpose by arguing that DOI has authority to cancel the leases because of deficient NEPA analysis. *See* Fed. Defs.' Resp. at 25 n. 9; Tribes' Resp. at 11; Gwich'in Steering Comm.'s Resp. at 12 n.55. Their defense fails, however, because the Secretary has no such authority—not under NEPA or any other federal law.

The Federal Defendants and Defendant-Intervenors rely on *Boesche v. Udall*, 373 U.S. 472 (1963), to assert that the Secretary may cancel oil and gas leases due to legal errors in their issuance, which include deficient NEPA analysis at the time of leasing.[4] *See* Fed. Defs.' Resp. at 25 n. 9; Tribes' Resp. at 11 n.44; Gwich'in Steering Comm.'s Resp. at 12 n.55. *Boesche* involved DOI's substantive error in issuing oil and gas leases. A lessee had challenged the Secretary's cancellation of a lease issued under the Mineral

---

[4] The Federal Defendants also cite *Northern Cheyenne Tribe v. Lujan*, 804 F. Supp. 1281, 1285 (D. Mont. 1991), in support of their assertion that the Secretary has authority to cancel leases due to legal errors in their issuance. In that case, a court voided oil and gas leases after finding that their issuance violated the United States' trust responsibilities to the Northern Cheyenne Tribe, the Federal Coal Leasing Amendments of 1976, and NEPA. *Id.* at 1284. Upon a motion for reconsideration, the district court instead suspended the leases and allowed DOI to prepare supplemental analysis "concerning whether the leases should be modified or cancelled to protect the Tribe." *Id.* The substantive and procedural differences of that case do not inform the propriety of the Moratorium.

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                              Page 11 of 21
Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 11 of 21

Leasing Act of 1920, as amended, after the Secretary determined that the lessee's leasing application was "defective" and that the lease was issued in error. *Boesche*, 373 U.S. at 474. The Secretary concluded that, because of the invalid application, he should have instead issued a lease over the same tract of land to a competing applicant. *See id.*

The Supreme Court upheld the cancellation, holding that "the Secretary has the power to correct administrative errors of the sort involved here[.]" *Boesche*, 373 U.S. at 485. The Court reasoned that the Secretary's "general managerial powers over the public lands" allow the Secretary to cancel leases except where a statute has withdrawn this authority. *Id.* at 476–77. The Court, however, emphasized the narrow reach of its decision, expressly cautioning that, "[i]n so holding we do not open the door to administrative abuses." *Id.* at 485.

The Federal Defendants and Defendant-Intervenors ignore the nature of the error at issue in *Boesche*, the Court's limited holding, and the Court's reasoning. First, in *Boesche*, the Court addressed the Secretary's substantive error in issuing a lease to the wrong applicant. 373 U.S. at 474. By contrast, NEPA is a procedural statute not intended to mandate a substantive outcome. *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2004) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 370 (1989)) ("NEPA imposes procedural requirements, but not substantive outcomes, on agency action."). Because NEPA is a procedural statute, courts often do not vacate agency decisions and, particularly, do not void oil and gas leases because of deficiencies in NEPA analyses. *E.g.*, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 108 (D.D.C. 2017)

*AIDEA, et al. v. Biden, et al.*                                   Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                        Page 12 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 12 of 21

(determining that vacatur of the easement was not appropriate because the agency's NEPA errors "are likely to be cured" on remand); *W. Watersheds Project v. Bernhardt*, 543 F. Supp. 3d 958, 996 (D. Idaho 2021) (remanding oil and gas leases without vacatur for NEPA violation); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 84 (D.D.C. 2019) (remanding oil and gas leases without vacatur because a NEPA violation "consists merely of a failure to fully discuss the environmental effects of those lease sales").  Furthermore, the Council on Environmental Quality has advised that a violation of its NEPA regulations should not be presumed to provide a basis for injunctive relief.  *See* 40 C.F.R. § 1500.3(c) (effective July 16, 2020).  And, Congress did not even enact NEPA until 1970—seven years after the *Boesche* decision.  *See* National Environmental Policy Act of 1969, Pub. L. No. 91–190, § 102, 83 Stat. 853 (1970).  Given the narrow holding in *Boesche*, in which the Court only allowed the correction of administrative errors "*of the sort involved here*," 373 U.S. at 485 (emphasis added), *Boesche* cannot be construed as allowing cancellation of oil and gas leases because of deficient NEPA analysis.

Second, the Federal Defendants and Defendant-Intervenors erroneously assume that the Secretary possesses the same legal authority over the Coastal Plain leases as the lease at issue in *Boesche*.  In *Boesche*, the Court reasoned that the Secretary's "general managerial powers over the public lands" allowed him to cancel a lease issued under the Mineral Leasing Act of 1920, as amended.  373 U.S. at 476–77.  Here, however, Congress has circumscribed the Secretary's "general managerial powers" over the Arctic National Wildlife Refuge ("ANWR").  When Congress established ANWR, it directed that ANWR

*AIDEA, et al. v. Biden, et al.*                                          Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                          Page 13 of 21
         Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 13 of 21

be managed for the enumerated purposes set forth in section 303(2)(B) of the Alaska National Interest Lands Conservation Act ("ANILCA"), Pub. L. No. 96-487, 94 Stat. 2371, 2390 (1980) (codified as amended at 16 U.S.C. § 668dd note). The discrete purposes for which the Secretary must manage ANWR are not comparable to its general management authority over public lands.

Furthermore, DOI issued the leases pursuant to the Tax Act, rather than the Mineral Leasing Act. In the Tax Act, Congress amended ANILCA "to provide for an oil and gas program on the Coastal Plain" and expressly directed the Secretary to hold an initial lease sale by December 2021 and a second lease sale by December 2024. Tax Act § 20001(b)(2)(B) and (c). The Tax Act's explicit leasing mandates therefore curbed any "general managerial powers" possessed by the Secretary and prevent her from cancelling the Leases.[5] Because the Secretary lacks authority to cancel the leases for deficiencies in NEPA analyses, the Moratorium is premised on an invalid purpose. Accordingly, the Moratorium must be set aside as arbitrary, capricious, not in accordance with law, and in excess of statutory authority.

---

[5] The Tribes also argue that DOI has an "inherent" power to reconsider its decisions but recognize that this power is subject to limitations imposed by Congress. *See* Tribes' Resp. at 14 ("agencies have inherent authority to reconsider their decisions and address legal errors *where Congress has not otherwise directed the agency*" (emphasis added)). Here, the Tax Act's requirement that DOI hold an initial lease sale by 2021 limits DOI's authority to reconsider its decision to issue the leases. *See* Tax Act § 20001(c)(1)(B)(ii)(1).

*AIDEA, et al. v. Biden, et al.*                                            Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                              Page 14 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 14 of 21

**C.     The Federal Defendants and Defendant-Intervenors Conflate the Moratorium with the Decision to Conduct Additional NEPA Analysis.**

The Federal Defendants and Defendant Intervenors erroneously construe the State's challenge to the Moratorium as, instead, a challenge to the Secretary's decision to conduct supplemental NEPA analysis.  Both the Federal Defendants and Defendant-Intervenors suggest that DOI's decision to conduct additional NEPA analysis is the subject of the State's challenge.  For example, the Federal Defendants argue that their litigation position in *Gwich'in Steering Committee v. Bernhardt*, No. 3:20-CV-00204-SLG, 2021 WL 46703 (D. Alaska Jan. 5, 2021), "does not constrain their ability to conduct supplemental NEPA analysis[.]"[6]  Fed. Defs.' Resp. at 33 n.11.  Gwich'in Steering Committee similarly casts the State's challenge as one to the preparation of supplemental analysis.  *See* Gwich'in Steering Comm.'s Resp. at 24 ("AIDEA and the State incorrectly argue that Interior's decision to conduct further NEPA analysis 'evades' or is 'at odds with' the Tax Act.").  Likewise, the Tribes defend the Secretary's decision to prepare supplemental NEPA analysis.[7]  Tribes' Resp. at 14 (defending DOI's finding that "legal deficiencies compel new analyses").

The Secretary's decision to prepare supplemental NEPA analysis, however, is not the subject of the State's Complaint.  *See* State Compl.  Rather, the State challenges the

---

[6] *See also* Fed. Defs.' Resp. at 2 ("It is well within the Secretary's discretion to order such a supplementation . . . ."), 26 ("Defendants' decision to conduct supplemental NEPA analysis of the Program was certainly not arbitrary or capricious.").

[7] The Tribes also observe that "[t]he ROD disclosed that BLM may undertake a Supplemental EIS prior to holding a second lease sale."  Tribes' Resp. at 6 (citing AR3161). Presumably, BLM intended that such supplemental analysis would examine the second lease sale rather than revisiting BLM's decision to hold the first lease sale.

*AIDEA, et al. v. Biden, et al.*                          Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                        Page 15 of 21

Secretary's distinct decision to "direct a temporary halt on all Department activities related to the [Leasing] Program" during preparation of the supplemental NEPA analysis, as well as similar direction in the Executive Order and Suspension Decisions. *See id.*; AR3362. The difference between the decision to undertake additional NEPA analysis and the Moratorium is significant because the Secretary's decision to prepare supplemental NEPA analysis does not compel implementation of the Moratorium.

The ROD could have remained in effect while BLM prepared supplemental NEPA analysis. The U.S. Court of Appeals for the Tenth Circuit recently recognized that "the regulations guiding the NEPA process do not require an agency to suspend agency action while preparing a supplemental environmental review." *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1031 (10th Cir. 2023). Moreover, in "multistage" projects such as oil and gas leasing and permitting, an agency need not suspend an action pending the outcome of supplemental NEPA analysis if the results of the analysis can be incorporated into future authorizations. *See Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation & Enf't*, 871 F. Supp. 2d 1312, 1339 (S.D. Ala. 2012). Accordingly, the Secretary's decision to prepare supplemental NEPA analysis did not require her to implement the Moratorium.

Furthermore, no reason exists to implement the Moratorium while BLM prepares supplemental NEPA analysis. The Federal Defendants have not identified any adverse impacts that would result from continuing to implement the Program and, for example,

*AIDEA, et al. v. Biden, et al.*                                Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                Page 16 of 21
Case 3:21-cv-00245-SLG    Document 66    Filed 03/20/23    Page 16 of 21

from authorizing archeological surveys.[8]  In fact, the Federal Defendants' Response confirms that no adverse impacts would occur if they continued to implement the Program during the supplemental analysis; the Federal Defendants emphasize that BLM will only approve site-specific proposals for exploration and development after additional environmental analysis that may take several years to prepare.  *See* Fed. Defs.' Resp. at 5–6.  Therefore, even if the Court were to accept the Federal Defendants' position that additional analysis of greenhouse gas emissions is necessary in light of recent judicial decisions, *see* Fed. Defs.' Resp. at 25–26, this position does not justify the Moratorium.  Accordingly, DOI has no need to implement the Moratorium while BLM prepares supplemental NEPA analysis.

Because the Secretary's decision to undertake supplemental NEPA analysis did not compel her to implement the Moratorium, the Secretary independently elected to implement the Moratorium while preparing the supplemental analysis.  The State challenges this decision to implement the Moratorium.  Accordingly, the Defendant and Defendant-Intervenors fail in their attempt to reframe the State's challenge.

---

[8] The Tribes suggest the Secretary implemented the Moratorium to "maintain the status quo" while BLM prepares supplemental NEPA analysis.  Tribes' Resp. at 2, 7.  The Secretary, however, did not offer this explanation for halting "all activities" related to the Leasing Program.  *See* AR3362.  The Court may not accept the Tribes' post hoc justification for the Moratorium.  *E.g.*, *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 31 F.4th 1203, 1209 (9th Cir. 2022); *Am. Waterways Operators v. Wheeler*, 507 F. Supp. 3d 47, 65 (D.D.C. 2020).

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                          Page 17 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 17 of 21

## CONCLUSION

For the reasons explained herein and in the States' Motion, there is no lawful basis for the Federal Defendants' efforts to evade and thwart express Congressional direction concerning oil and gas development on the Coastal Plain. Federal Defendants' actions in implementing the Moratorium must be based on applicable statutory authority and must meet all standards and processes required for such actions under the APA. Because the Federal Defendants chose to "short-circuit" those processes and exercise authority that Congress never gave them, the actions must be set aside.

DATED: March 20, 2023.

TREG TAYLOR
ATTORNEY GENERAL

By:     */s/ Ronald W. Opsahl*
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email: ron.opsahl@alaska.gov

By:     */s/ Kathleen C. Schroder*
Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com

*AIDEA, et al. v. Biden, et al.*                                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                                    Page 18 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 18 of 21

gail.wurtzler@dgslaw.com
mark.champoux@dgslaw.com
nick.peppler@dgslaw.com

*Attorneys for the State of Alaska*

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                              Page 19 of 21
Case 3:21-cv-00245-SLG     Document 66     Filed 03/20/23     Page 19 of 21

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 4,456 words.

*/s/ Kathleen C. Schroder*

*AIDEA, et al. v. Biden, et al.*      Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment      Page 20 of 21

Case 3:21-cv-00245-SLG  Document 66  Filed 03/20/23  Page 20 of 21

## CERTIFICATE OF SERVICE

I certify that on **March 20, 2023**, the foregoing document was served electronically on all parties listed on the CM/ECF system.

*/s/ Kathleen C. Schroder*

*AIDEA, et al. v. Biden, et al.*                    Case No. 3:21-cv-00245-SLG
State of Alaska's Reply in Support of
Motion for Summary Judgment                        Page 21 of 21

Case 3:21-cv-00245-SLG      Document 66      Filed 03/20/23      Page 21 of 21