Kyle W. Parker, ABA No. 9212124
William G. Cason, ABA No. 2009083
HOLLAND & HART LLP
420 L Street, Suite 550
Anchorage, Alaska 99501
Telephone: (907) 865-2600
kwparker@hollandhart.com
wgcason@hollandhart.com

Bryson C. Smith (*Admitted pro hac vice*)
HOLLAND & HART LLP
645 S. Cache Street, Suite 100
P.O. Box 68
Jackson, WY 83001
Telephone: (307) 739-9741
bcsmith@hollandhart.com

*Attorneys for Plaintiffs Alaska Industrial
Development and Export Authority, North Slope Borough, Arctic Slope Regional
Corporation, and Kaktovik Iñupiat Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, *et al.*, <br>         *Plaintiffs*, <br>    and <br><br> STATE OF ALASKA, <br>         *Intervenor-Plaintiff*, <br>    v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br>         *Defendants*, <br><br>    and <br><br> NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, *et al.*, <br>         *Intervenor-Defendants*. | Case No. 3:21-cv-00245-SLG <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................... 2

I.   SECTION 4(A) OF EXECUTIVE ORDER 13990 IS *ULTRA VIRES*. ................................ 2

II.  THE MORATORIUM EXCEEDS THE AGENCY DEFENDANTS' STATUTORY
     AUTHORITY. .................................................................................................... 4

     A.   Agency Defendants Do Not Have "Inherent Authority" to
          Implement the Moratorium. .......................................................... 7

     B.   The Tax Act's Reference to the NPRPA Does Not Authorize the
          Moratorium. ................................................................................ 8

III. THE MORATORIUM VIOLATES THE TAX ACT, ANILCA, AND FLPMA. ................. 10

     A.   The Moratorium Violates the Tax Act. ...................................... 11

     B.   The Moratorium Violates ANILCA. .......................................... 12

     C.   The Moratorium Violates FLPMA. ............................................ 12

IV.  THE MORATORIUM IS SUBJECT TO THE APA'S NOTICE AND COMMENT
     REQUIREMENTS. .............................................................................................. 13

V.   AGENCY DEFENDANTS FAILED TO PROVIDE A REASONED EXPLANATION
     FOR THEIR REVERSAL OF POSITION. ................................................................. 16

VI.  THE COURT SHOULD DECLARE UNLAWFUL, VACATE, AND ENJOIN
     EXECUTIVE ORDER 13990 § 4(A) AND THE MORATORIUM. .................................. 19

CONCLUSION ........................................................................................................ 20

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 2 of 28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ala. Ass'n of Realtors v. HHS*,
    141 S. Ct. 2485 (2021) ................................................................................. 6

*All. for the Wild Rockies v. U.S. Forest Serv.*,
    907 F.3d 1105 (9th Cir. 2018) ............................................................... 11, 19

*Appalachian Power Co. v. EPA*,
    208 F.3d 1015 (D.C. Cir. 2000) ..................................................................... 15

*Bldg. & Constr. Trades Dep't v. Allbaugh*,
    295 F.3d 28 (D.C. Cir. 2002) ........................................................................... 4

*Bob Marshall Alliance v. Hodel*,
    852 F.2d 1223 (9th Cir. 1988) ....................................................................... 13

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
    924 F.3d 684 (4th Cir. 2019) ......................................................................... 15

*Century Exploration New Orleans, LLC v. United States*,
    110 Fed. Cl. 148 (2013) ................................................................................. 11

*City & Cnty. of San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) ..................................................................... 3, 4

*City of Arlington v. FCC*,
    569 U.S. 290 (2013) ......................................................................................... 4

*City of Los Angeles v. Barr*,
    941 F.3d 931 (9th Cir. 2019) ......................................................................... 10

*City of San Jose v. Trump*,
    497 F. Supp. 3d 680 (N.D. Cal. 2020) ............................................................. 3

*Common Cause v. Trump*,
    506 F. Supp. 3d 39 (D.D.C. 2020) ................................................................... 3

*Concerned Citizens of Bridesburg v. EPA*,
    836 F.2d 777 (3d Cir. 1987) ............................................................................. 7

*Ctr. for Biological Diversity v. Haaland*,
    998 F.3d 1061 (9th Cir. 2021) ............................................................. 18, 19

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ......................................................................... 16, 17

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) ..................................................................................... 19

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ..................................................................................... 18

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ....................................................................................... 6

*FEC v. Ted Cruz for Senate*,
    142 S. Ct. 1638 (2022) ............................................................................... 4, 5

*Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*,
    381 F. Supp. 3d 1127 (D. Alaska 2019) ....................................................... 3

*HIAS, Inc. v. Trump*,
    985 F.3d 309 (4th Cir. 2021) ........................................................................ 3

*K Mart Corp. v. Cartier*,
    486 U.S. 281 (1988) ....................................................................................... 9

*La. Public Serv. Com v. FCC*,
    476 U.S. 355 (1986) ....................................................................................... 4

*League of Conservation Voters v. Trump*,
    303 F. Supp. 3d 985 (D. Alaska 2018) ......................................................... 3

*Louisiana v. Biden*,
    Case No. 21-cv-778, 2022 U.S. Dist. LEXIS 148570 (W.D. La. Aug. 18, 2022). 15, 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 3

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987) .................................................................... 15

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 2001) .................................................................... 5

*Minard Run Oil v. U.S. Forest Service,*
    670 F.3d 236 (3d Cir. 2011) ....................................................................... 15

*Mountain States Legal Found. v. Hodel,*
    668 F. Supp. 1466 (D. Wyo. 1987) ............................................................ 13

*Natural Res. Def. Council v. Abraham,*
    355 F.3d 179 (2d Cir 2004) .......................................................................... 7

*Natural Res. Def. Council v. EPA,*
    31 F.4th 1203 (9th Cir. 2022) .................................................................... 16

*Natural Res. Def. Council v. Nat'l Highway Traffic Safety Admin.,*
    894 F.3d 95 (2d Cir 2018) ................................................................ 7, 8, 12

*Sierra Club North Star Chapter v. LaHood,*
    693 F. Supp. 2d 958 (D. Minn. 2010) ...................................................... 19

*Sun Oil Co. v. United States,*
    572 F.2d 786 (Fed. Cl. 1978) .................................................................... 11

*Texas v. United States,*
    787 F.3d 733 (5th Cir 2015) ..................................................................... 15

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ......................................................................... 5, 6, 9

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ............................................................................... 6, 10

*Yesler Terrace Cmty. Council v. Cisneros,*
    37 F.3d 442 (9th Cir. 1994) ................................................................ 13, 14

### STATUTES

5 U.S.C. § 551(4) ................................................................................................. 14

5 U.S.C. § 706(1) ................................................................................................. 12

5 U.S.C. § 706(2) ............................................................................................... 1, 12

5 U.S.C. § 706(2)(C) .............................................................................................. 5

42 U.S.C. § 6506a(k)(2) ........................................................................................ 9

Administrative Procedure Act ("APA") ......................................................... passim

iv

Alaska National Interest Lands Conservation Act ("ANILCA") ........................ 1, 5, 10, 12

Federal Land Policy and Management Act ("FLPMA") ..................................... 2, 5, 10, 12

National Environmental Policy Act (NEPA) ................................................. 8, 17

Naval Petroleum Reserves Production Act ("NPRPA") ..................................... 6, 8, 9, 10

Tax Cuts and Jobs Act ("Tax Act") ........................................................... passim

## OTHER AUTHORITIES

Executive Order 13990 ............................................................................ 1, 2, 3, 17

Permanent Instruction Memorandum (PIM) 2022-001 (Oct. 14, 2021) ............................. 8

Secretarial Order 3401 ........................................................................... 2, 14, 17

Defendants and Intervenors[1] have failed to rebut Plaintiffs' claims that Executive Order 13990 and Agency Defendants' Moratorium are unlawful. As a threshold matter, Defendants fundamentally mischaracterize Plaintiffs' claims—asserting that they "are really failure to act claims 'dressed up' as a challenge to final agency action." Defs.' Resp., ECF No. 63 at 30 (hereafter "Defs.' Resp.").[2] This action is not a challenge to the speed with which Defendants process Coastal Plain applications, nor is it a challenge to Defendants' failure to grant any particular application. Rather, Plaintiffs challenge the President's call for, and the Agency Defendants' implementation of, the Moratorium, pursuant to which Agency Defendants have suspended **all** Coastal Plain leases and categorically refused to process **any** applications related to oil and gas activities on the Coastal Plain. The Moratorium is a discrete agency action subject to challenge under 5 U.S.C. § 706(2). *See* Pls.' Mot. for Summ. J., ECF No. 60 at 23-24 (hereafter "Motion").

To the extent Defendants and Intervenors address the merits of Plaintiffs' claims, they fail to overcome Plaintiffs' showing that the President and Agency Defendants acted unlawfully. Section 4(a) of Executive Order 13990 is *ultra vires* in its directive to implement the statutorily unauthorized Moratorium. In addition to being unauthorized, the Moratorium violates the Tax Cuts and Jobs Act ("Tax Act"), the Alaska National

---

[1] As used herein, "Defendants" refers to all Defendants, "Agency Defendants" refers to all Defendants other than President Biden, and "Intervenors" refers to Intervenor-Defendants.

[2] *See also id.* at 8, 28, 31 (asserting that Plaintiffs are challenging the "pace" of Defendants' implementation of the Coastal Plain Leasing Program).

Interest Lands Conservation Act ("ANILCA"), the Federal Land Policy and Management Act ("FLPMA"), and the Administrative Procedure Act ("APA"). As a result, this Court should declare unlawful and vacate both Executive Order 13990 § 4(a) and the Moratorium, and enjoin Defendants from further implementing either.

## ARGUMENT

I. **SECTION 4(A) OF EXECUTIVE ORDER 13990 IS *ULTRA VIRES*.**

Defendants assert that Plaintiffs "lump together Executive Order 13990 and Secretarial Order 3401" and treat them together as "the Moratorium." Defs.' Resp. at 21. While the Executive Order and Agency Defendants' actions are related and have as their common purpose an unlawful halt of the Coastal Plain Leasing Program, Plaintiffs' complaint and summary judgment motion recognize the distinction between presidential and agency action. *See* Motion at 8 (explaining the unlawfulness of the "executive order and ensuing moratorium"); *id.* at 15 (defining the "Moratorium" to consist of "Secretarial Order 3401 and Agency Defendants' actions in furtherance thereof (including the Coastal Plain lease suspensions and refusal to process applications)").

Continuing with their false premise that Plaintiffs have conflated presidential and agency action, Defendants argue that Executive Order 13990 is not subject to challenge because the President's actions are not governed by the APA. Defs.' Resp. at 21. That is a strawman argument, as Plaintiffs do not challenge Executive Order 13990 under the APA. Instead, Plaintiffs challenge the Executive Order under the *ultra vires* doctrine. Second Am. Compl., ECF No. 34 at ¶¶ 153-55; Motion at 19-22. This is a well-

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 2 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 8 of 28

recognized doctrine, enforced by both the Ninth Circuit and this Court, that provides for challenges to presidential actions that are unsupported by constitutional or statutory authority. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018); *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021); *League of Conservation Voters v. Trump*, 303 F. Supp. 3d 985, 994 (D. Alaska 2018); *City of San Jose v. Trump*, 497 F. Supp. 3d 680, 705-06 (N.D. Cal. 2020).[3]

Defendants likewise miss the mark in their reliance on the Executive Order's savings clause, which directs the Secretary to implement the Moratorium "as appropriate and consistent with applicable law." AR 3351. As Plaintiffs explained in their opening brief, the Ninth Circuit has rejected the notion that a savings clause can sustain an otherwise unlawful executive order. Motion at 21 (quoting *San Francisco*, 897 F.3d at 1240). Defendants ask this Court to ignore this binding precedent by pointing to two out-of-circuit cases—*Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020),[4] and

---

[3] Defendants erroneously assert that Plaintiffs lack standing to challenge Executive Order 13990. The Secretary explicitly stated that she was implementing the Moratorium "in furtherance of Section 4(a) of Executive Order (EO) 13990." AR 3362. Because the Executive Order gave rise to the Moratorium, which undisputedly harmed Plaintiffs, Plaintiffs' harm is "fairly traceable" to the Executive Order. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Moreover, as evidenced by the cases immediately preceding this footnote, courts have repeatedly heard cases challenging executive orders that direct agencies to take action impacting the challenging party. *See also Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 381 F. Supp. 3d 1127, 1134-35 (D. Alaska 2019).

[4] Another court within the Ninth Circuit heard a challenge to the same presidential memorandum at issue in *Common Cause* and expressly rejected the memorandum's savings clause. *San Jose*, 497 F. Supp. 3d at 705-06.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 3 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 9 of 28

*Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002). Each of those cases involved a situation where plaintiffs argued that agencies *might* implement an executive order in a manner inconsistent with statute, even though the precise agency action was not yet known. That is readily distinguishable from the situation here, where the President unequivocally called for a "temporary moratorium," AR 3351, and the Agency Defendants indisputably implemented it, AR 3362 (Secretarial Order implementing "temporary halt" on Coastal Plain Leasing Program). In any event, to the extent there is a conflict in the case law regarding the validity of the Executive Order's savings clause, the Ninth Circuit's decision in *San Francisco* controls.

Defendants' final argument regarding the Executive Order is that there is no inherent conflict between congressional statute and the presidential directive to implement a "temporary moratorium" on the Leasing Program. That is incorrect. As further explained below, Agency Defendants have no statutory authority to implement the Moratorium. Because the Executive Order directs the Secretary to implement the Moratorium in contravention of statutory authority, the Order is *ultra vires*.

## II. THE MORATORIUM EXCEEDS THE AGENCY DEFENDANTS' STATUTORY AUTHORITY.

It is a well settled principle that an agency "literally has no power to act . . . unless and until Congress authorizes it to do so by statute." *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1649 (2022) (internal quotations omitted); *see also City of Arlington v. FCC*, 569 U.S. 290, 317 (2013) (same principle); *La. Public Serv. Com v. FCC*, 476 U.S. 355, 374 (1986) (same principle). "[I]f there is no statute conferring authority, a federal

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 4 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 10 of 28

agency has none," in which case the agency action "is plainly contrary to law and cannot stand." *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001); *see also* 5 U.S.C. § 706(2)(C) (directing courts to set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right").

The Moratorium—pursuant to which Agency Defendants have suspended all nine Coastal Plain leases and categorically refused to process any applications—is not authorized by any statutory provision. Although Plaintiffs raised this argument in their opening brief,[5] Defendants do not address it in their response. Rather than identify a statutory basis for the Moratorium, Defendants merely argue that the Moratorium did not affirmatively violate the Tax Act, ANILCA, FLPMA, or the APA's arbitrary and capricious standard. Defs.' Resp. at 29-42.

By arguing that the Moratorium is lawful because it does not affirmatively violate statutory provisions, Defendants' brief implies that agencies have plenary power to take any action that is not expressly prohibited by statute. That is a gross distortion of administrative law, as it inverts the principle that an agency has "no power to act . . . unless and until Congress authorizes it to do so." *Ted Cruz for Senate*, 142 S. Ct. at 1649 (internal quotations omitted). Because Defendants make no argument—let alone a compelling one—that the Moratorium is authorized by any statute, the Moratorium must be declared unlawful and vacated. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607-08

---

[5] Motion at 8 ("The executive order and ensuing moratorium are unauthorized by any statute . . . ."); *id.* at 24 (Moratorium "is unauthorized by statute").

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 5 of 22

(2022) (invalidating EPA rule that exceeded statutory authorization); *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2486 (2021) (holding Congress did not grant CDC the "sweeping authority that it asserts" in implementing nationwide eviction moratorium in response to COVID-19 pandemic); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (holding EPA lacked authority to consider costs in setting air quality standards absent a "clear" "textual commitment of authority" from Congress); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125-26 (2000) (holding FDA was not authorized by statute to regulate tobacco products).[6]

Unlike the Agency Defendants whose actions are at issue, Intervenors purport to identify a statutory basis for the Moratorium. Specifically, they point to (i) the purported "inherent authority" of agencies to reconsider decisions and correct purported legal errors, and (ii) Section 20001(b)(3)'s reference to management of the Coastal Plain similar to the administration of lease sales under the Naval Petroleum Reserves Production Act ("NPRPA"). Response of Intervenors Gwich'in Steering Committee *et al.*, ECF No. 64 at 24-28 (hereafter "Gwich'in Resp."); Response of Intervenors Native Village of Venetie Tribal Government *et al.*, ECF No. 65 at 16-21 (hereafter "Venetie Resp."). Each of these arguments fails. The simple fact remains that no statute

---

[6] In *West Virginia*, *Alabama Association of Realtors*, and *Brown & Williamson*, the agency at least made an argument—albeit unsuccessfully—that its actions were authorized by a particular statute. Here, Agency Defendants have put forth no argument that the Moratorium is authorized by any particular statute.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 6 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 12 of 28

authorizes Agency Defendants to categorically suspend all Coastal Plain leases and categorically refuse to process any applications for work on the Coastal Plain.

### A. Agency Defendants Do Not Have "Inherent Authority" to Implement the Moratorium.

Intervenors argue that agencies have "inherent authority" to reconsider their decisions and correct purported legal errors. Gwich'in Resp. at 24-25; Venetie Resp. at 18-21. As a threshold matter, the case law makes clear that agencies enjoy no such unfettered authority. *Natural Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 112-13 (2d Cir 2018); *Natural Res. Def. Council v. Abraham*, 355 F.3d 179, 202-04 (2d Cir 2004); *Concerned Citizens of Bridesburg v. EPA*, 836 F.2d 777, 786 (3d Cir. 1987).

More importantly, Intervenors' "inherent authority" argument is limited to Agency Defendants' reconsideration of the environmental review reflected in the Record of Decision. But the Moratorium goes well beyond reconsideration of the environmental review process. Regardless of whether Agency Defendants have some sort of inherent authority to supplement their environmental review to address purported legal deficiencies therein, Intervenors point to no authority, inherent or otherwise, authorizing Agency Defendants to suspend all Coastal Plain leases and refuse to process any Coastal Plain work applications. Agency Defendants' decision to conduct supplemental review, whether or not authorized, "does not simultaneously convey authority to indefinitely

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 7 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 13 of 28

delay" the Leasing Program, much less to affirmatively implement the Moratorium.[7]
*Natural Res. Def. Council*, 894 F.3d at 111-12.[8]

Likewise, Intervenors miss the mark with their argument that the Secretary has

inherent power to cancel invalid leases, and therefore has inherent power to suspend

leases. First, as the State of Alaska explained in its summary judgment motion,

cancellation of the Coastal Plain leases would violate the Tax Act and NEPA. *See* ECF

No. 59 at 25-26. Second, the Secretary has made no determination that the Coastal Plain

leases are invalid. Third, the authority to cancel an individual lease, even if it existed,

would not constitute authority to implement a program-wide "halt" on all leases and

applications. AR 3362.

### B. The Tax Act's Reference to the NPRPA Does Not Authorize the Moratorium.

Intervenors also claim that Section 20001(b)(3) of the Tax Act authorizes Agency

Defendants' actions by directing the Secretary, "[e]xcept as otherwise provided in"

Section 20001, to "manage the oil and gas program on the Coastal Plain in a manner

similar to the administration of lease sales" under the NPRPA. Pub. L. No. 115-97, §

---

[7] Beyond the Coastal Plain, BLM has stated that oil and gas leases typically "remain in effect" when BLM decides to reassess the underlying environmental analysis for the leasing decision. Permanent Instruction Memorandum (PIM) 2022-001 (Oct. 14, 2021). This underscores the significant difference between conducting supplemental environmental review, on the one hand, and suspending all leases and refusing to process all applications, on the other.

[8] None of the response briefs address this illustrative case, to which Plaintiffs cited multiple times in their opening brief. Motion at 29, 32, 39.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 8 of 22
Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 14 of 28

20001(b)(3), 131 Stat. 2236 (2017). The NPRPA, in turn, governs the National Petroleum Reserve and authorizes the Secretary to "direct or assent to the suspension of operations and production on any lease or unit." 42 U.S.C. § 6506a(k)(2). Intervenors' argument fails for several reasons.

First of all, Defendants' silence on this point strongly indicates that they do not share Intervenors' expansive interpretation of statutory authority.

As to the merits, Section 20001(b)(3) invokes the NPRPA "[e]xcept as otherwise provided in" Section 20001. In other words, Section 20001(b)(3) must be interpreted in light of the rest of Section 20001, consistent with the "fundamental" principle that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia*, 142 S. Ct. at 2607; *see also K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). Section 20001 mandates that the Secretary issue two lease sales by December 2024 (including one by December 2021) and issue all necessary easements and rights-of-way. Pub. L. No. 115-97, § 20001(c), 131 Stat. 2236-37. Despite these mandates, Intervenors ask this Court to hold that Section 20001(b)(3)'s reference to the NPRPA means that the Secretary may indefinitely suspend all Coastal Plain leases and indefinitely refuse to process any applications for easements or rights-of-way.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 9 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 15 of 28

Such an interpretation would turn Section 20001 on its head—replacing congressional mandates with unfettered Secretarial discretion. This is contrary to the principle that an agency "may not construe [a] statute in a way that completely nullifies textually applicable provisions meant to limit its discretion." *Whitman*, 531 U.S. at 485. Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – it does not, one might say, hide elephants in mouseholes." *Id.* at 468; *City of Los Angeles v. Barr*, 941 F.3d 931, 949 (9th Cir. 2019). This Court should reject Intervenors' invitation to find an elephant in Section 20001's lone reference to the NPRPA, particularly given that Defendants themselves have never claimed such an elephant exists.

Finally, the NPRPA's applicability to the Coastal Plain is expressly limited to the "administration of lease sales." Pub. L. No. 115-97, § 20001(b)(3), 131 Stat. 2236. Thus, whatever the NPRPA may authorize the Secretary to do with respect to Coastal Plain lease sales, it plainly does not authorize a refusal to process any ***post-sale*** easement or right-of-way applications.

## III. THE MORATORIUM VIOLATES THE TAX ACT, ANILCA, AND FLPMA.

Because the Moratorium is not affirmatively authorized by any statute, it is unlawful. But the Moratorium's unlawfulness does not end there. In addition to being unauthorized, the Moratorium violates the Tax Act, ANILCA, and FLPMA.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 10 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 16 of 28

## A.     The Moratorium Violates the Tax Act.

The Tax Act requires the Secretary to conduct two lease sales on the Coastal Plain—one by December 2021 and another by December 2024.  Pub. L. No. 115-97, § 20001(c)(1)(B)(i), 131 Stat. 2236-37.  The Tax Act further requires the Secretary to "issue any rights-of-way or easements across the Coastal Plain for the exploration, development, production, or transportation necessary to carry out" Section 20001.  *Id.* § 20001(c)(2), 131 Stat. 2237.  Defendants and Intervenors argue that the word "necessary" vests the Secretary with discretion to determine whether an easement or right-of-way should be issued.  Defs.' Resp. at 28 n.6; Gwich'in Resp. at 29.[9]

That point, which Plaintiffs do not dispute, is a red herring.  Plaintiffs do not contest the Secretary's decision to deny a particular easement or right-of-way on the grounds that it is not "necessary to carry out" Section 20001.  To the contrary, Plaintiffs contest the Secretary's blanket suspension of ***all*** Coastal Plain leases and categorical refusal to process ***any*** easement or right-of-way applications.  By flatly refusing to consider, let alone issue, any easement or right-of-way applications, the Secretary cannot possibly comply with her duty to issue any "necessary" easements or rights-of-way.  Furthermore, Section 20001's mandatory deadlines for Coastal Plain lease sales would be a dead letter if the Secretary could indefinitely suspend all leases after nominally

---

[9] Defendants' citations to *Century Exploration New Orleans, LLC v. United States*, 110 Fed. Cl. 148, 168 (2013), and *Sun Oil Co. v. United States*, 572 F.2d 786 (Fed. Cl. 1978), are inapposite.  Those cases involved breach of contract and takings claims and had nothing to do with the Tax Act.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 11 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 17 of 28

complying with the sale deadline.  *See Natural Res. Def. Council*, 894 F.3d at 111-12 (holding agency's "indefinite delay" in implementing statute "would flout the . . . core objects" of statute (internal quotations omitted)).  As a result, the Moratorium runs afoul of the Tax Act and must be "set aside."  5 U.S.C. § 706(2).[10]

### B.    The Moratorium Violates ANILCA.

The Moratorium also conflicts with ANILCA.  As part of the Tax Act, Congress amended ANILCA to provide a new purpose for the Arctic National Wildlife Refuge ("ANWR"): "to provide for an oil and gas program on the Coastal Plain."  Pub. L. No. 115-97, § 20001(b)(2)(B), 131 Stat. 2236.  By flouting their duties under the Tax Act regarding lease sales, easements and rights-of-way, Agency Defendants have undermined ANILCA's new purpose for ANWR.

### C.    The Moratorium Violates FLPMA.[11]

The Moratorium constitutes "more than mere delay in the leasing process; rather, it involves affirmative action to withhold" the Coastal Plain "from mineral leasing, thereby limiting leasing activities in order to maintain basic environmental values for an indefinite period of time" while conducting supplemental environmental review.

---

[10] Agency Defendants have also failed to take discrete action required by the Tax Act. That failure necessitates injunctive relief under 5 U.S.C. § 706(1).  *See* Motion at 39-40.

[11] The Gwich'in Intervenors suggest that FLPMA may not apply to the Coastal Plain at all.  Gwich'in Resp. at 39.  Notably, Defendants do not make this argument.  In any event, FLPMA provides the only means by which BLM may withdraw land from the public domain.  Thus, if FLPMA did not apply, there would be no possible way BLM could lawfully withdraw the Coastal Plain.  Rather than support the Moratorium, FLPMA's inapplicability would further underscore its unlawfulness.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 12 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 18 of 28

*Mountain States Legal Found. v. Hodel*, 668 F. Supp. 1466, 1474 (D. Wyo. 1987). The

Moratorium therefore constitutes a withdrawal. *Id.* And because the Moratorium was

not implemented pursuant to FLPMA's procedural requirements for a withdrawal, it is

unlawful. *See id.*

Defendants point to *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223 (9th Cir.

1988), for the proposition that the Moratorium does not qualify as a "withdrawal." Defs.'

Resp. at 34. But that case is readily distinguishable in that it involved BLM's

discretionary decision not to issue a specific lease. The Moratorium does not involve a

discretionary decision not to issue a particular lease, but rather constitutes a blanket and

indefinite suspension of all Coastal Plain leases, as well as an indefinite refusal to process

any easement or right-of-way applications.

## IV. THE MORATORIUM IS SUBJECT TO THE APA'S NOTICE AND COMMENT REQUIREMENTS.

Defendants and Intervenors argue that the APA's notice and comment

requirements do not apply to the Moratorium for two reasons. First, they argue that the

Moratorium does not constitute a rule. Second, they argue that even if the Moratorium

does constitute a rule, it is an interpretive rule rather than a substantive rule. These

arguments fly in the face of the case law and should be rejected.

Defendants quote language from the Ninth Circuit providing that "[a]djudications

resolve disputes among specific individuals in specific cases, whereas rulemaking affects

the rights of broad classes of unspecified individuals." Defs.' Resp. at 35 (quoting *Yesler*

*Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994)); *see also* Venetie

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 13 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 19 of 28

Resp. at 23 ("Adjudications are 'highly fact-specific,' utilize 'case-by-case' review, and have immediate concrete effects on specific individuals. By contrast, agency rules are prospective and generally have effect only after being subsequently applied."). Under Defendants' and Intervenors' own framing of the distinction, the Moratorium plainly qualifies as a rule. The Moratorium applies to any and every Coastal Plain lease, and any and every application for oil and gas activities on the Coastal Plain. Whenever someone submits an application to perform oil-and-gas-related work on the Coastal Plain, the Moratorium dictates that BLM refuse to process it, regardless of the applicant's identity and regardless of the precise nature or location of the proposed work. AR 3363.[12] Thus, rather than "resolve disputes among specific individuals in specific cases," the Moratorium applies prospectively and "affects the rights of broad classes of unspecified individuals." *Yesler Terrace*, 37 F.3d at 448.[13]

Moreover, the Moratorium is a substantive, rather than interpretive, rule, as it leaves agency personnel with no discretion to process leases or applications on a case-by-case basis. So long as the Moratorium remains in place, no application to perform oil-and-gas-related work on the Coastal Plain may be processed. The binding effect of the

---

[12] This is borne out by practice. When various contractors submitted applications to perform work on the Coastal Plain, Agency Defendants invariably responded that they could not process the applications as a result of Secretarial Order 3401 and the suspension notices. AR 3720, 3395, 3399.

[13] The Moratorium also meets the APA's definition of a "rule" because it is "an agency statement of general . . . applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 14 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 20 of 28

Moratorium is dispositive of the substantive rule question. *See Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987); *Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 702 (4th Cir. 2019); *Texas v. United States*, 787 F.3d 733, 762 (5th Cir 2015), *aff'd by an equally divided court in United States v. Texas*, 579 U.S. 547 (2016); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000).[14]

Finally, Defendants and Intervenors have failed to meaningfully address the case law showing that agency actions like the Moratorium are subject to notice and comment. Motion at 35. The Moratorium here is analogous to various agency actions in other cases, particularly the Forest Service's moratorium on new drilling in *Minard Run Oil v. U.S. Forest Service*, 670 F.3d 236 (3d Cir. 2011), and the Biden Administration's pause on oil and gas lease sales in *Louisiana v. Biden*, Case No. 21-cv-778, 2022 U.S. Dist. LEXIS 148570 (W.D. La. Aug. 18, 2022). In each of those cases, the court held that the agency was required to follow the APA's notice and comment requirements. *Minard Run Oil*, 670 F.3d at 255; *Louisiana*, 2022 U.S. Dist. LEXIS at *52-*55. Neither Defendants nor Intervenors provide a serious argument for why notice and comment was required for those agency actions but is not required here.[15]

---

[14] Defendants' block quote from *Mada-Luna* supports Plaintiffs' position. Defs.' Resp. at 38. Because the Moratorium "establish[es] a binding norm," it is a substantive rule. Unlike a policy statement that "announces the agency's tentative intentions for the future," the Moratorium rigidly dictates that Agency Defendants refuse to process any application for Coastal Plain oil and gas activities.

[15] If anything, notice and comment is even more obviously required here than in *Louisiana*. In that case, there was no discrete agency action constituting a pause. Rather, a pause was deemed to exist based on the totality of the agencies' actions in failing to

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 15 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 21 of 28

In short, the Moratorium is not a fact-specific adjudication turning on the particularities of a given lease or application. It is a blanket rule that applies across the board to all Coastal Plain leaseholders and applicants. As a result, the Moratorium is a substantive rule for which notice and comment is required.

## V. AGENCY DEFENDANTS FAILED TO PROVIDE A REASONED EXPLANATION FOR THEIR REVERSAL OF POSITION.

In addition to exceeding their statutory authority and ignoring the notice and comment requirements, Agency Defendants acted arbitrarily and capriciously by failing to provide a reasoned explanation for their reversal of position regarding the adequacy of environmental review.[16]

"An agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909-1910 (2020); *see also Natural Res. Def. Council v. EPA*, 31 F.4th 1203, 1208 (9th Cir. 2022) ("The law is clear that we can only uphold agency action based on the reasons the agency gave for its decision."). In this case, the Secretary identified two "alleged legal

---

issue lease sales. *Louisiana*, 2022 U.S. Dist. LEXIS at *32-*35. Here, by contrast, the Secretarial Order explicitly implements a "temporary halt" on all Coastal Plain actions, AR 3362, "in furtherance of" the Executive Order's directive to implement a "temporary moratorium," AR 3351.

[16] Defendants mischaracterize Plaintiffs' claim as a challenge to Agency Defendants' decision "to supplement a prior NEPA analysis," which they argue does not constitute a final decision that could constitute a reversal. Defs.' Resp. at 39. As explained above, this is a challenge to the Moratorium, which is a final agency action that constitutes a reversal of Agency Defendants' position regarding the adequacy of environmental review.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 16 of 22
Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 22 of 28

deficiencies" as the reasons for implementing the Moratorium.  AR 3362.  Those alleged

legal deficiencies were "insufficient analysis under the National Environmental Policy

Act (NEPA), including failure to adequately analyze a reasonable range of alternatives in

the environmental impact statement (EIS); and (2) failure in the . . . Record of Decision

(ROD) to properly interpret Section 20001" of the Tax Act.  AR 3362.  Because these

were the reasons Agency Defendants "gave when [they] acted" to implement the

Moratorium, these are the reasons upon which the Moratorium must be judged.

Defendants' response brief does not defend the Secretary's purported reasons for

implementing the Moratorium.  Defendants instead rely exclusively on a purported need

to further analyze the Leasing Program's impacts with respect to greenhouse gas

emissions.  Defs.' Resp. at 32-33.  Because the Secretarial Order did not mention

greenhouse gas emissions, this argument constitutes "an impermissible *post hoc*

rationalization[]."  *Dep't of Homeland Security*, 140 S. Ct. at 1909.

It is true that BLM's suspension notices mentioned greenhouse gas emissions.  AR

3364, 3714, 3716.  However, the suspension notices did not "identif[y]" the greenhouse

gas analysis "as a legal defect."  AR 3365, 3715, 3717.  Moreover, the suspension notices

were issued pursuant to Secretarial Order 3401.  *Id.* (notices issued "consistent with the

direction provided in Executive Order 13990 and Secretarial Order 3401").  Thus, the

Secretarial Order commenced the Moratorium, and any purported reasons for the

Moratorium are limited to those specified in the Secretarial Order.  Defendants similarly

err in their reliance on a discussion of greenhouse gas emissions in an August 2022

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 17 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 23 of 28

addendum to the suspension notices. AR 3404-05. Because that document was issued after the Moratorium was implemented, it cannot provide the reasons for the Moratorium.

Regardless of the reasons given, Agency Defendants failed to reconcile the Moratorium with their prior statements that the environmental review for the Leasing Program was adequate. *See* AR 3362 (Secretarial Order directing "halt" on Coastal Plain Leasing Program and identifying "legal deficiencies" in environmental review, without addressing fact that Secretary had previously concluded that environmental review was complete and adequate, AR 3140). Defendants and Intervenors appear to rely on the reversal itself—the assertion of legal errors in the environmental review—as a "reasoned explanation." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Of course, an agency's duty to provide a "reasoned explanation" for its reversal would be meaningless if that duty could be satisfied by the reversal itself.

Rather than simply identify purported legal errors in the environmental review, Agency Defendants must explain why they changed their position after previously determining the environmental review to be adequate. Agency Defendants made no effort to do so when they implemented the Moratorium. This failure to explain their reversal in position is arbitrary and capricious. *Fox Television Stations*, 556 U.S. at 515; *Ctr. for Biological Diversity v. Haaland*, 998 F.3d 1061, 1067 (9th Cir. 2021).

Finally, Gwich'in Intervenors attempt to distinguish the cases cited in Plaintiffs' opening brief, Motion at 37-38, on the grounds that the Moratorium constitutes an effort to "address legal problems." Gwich'in Resp. at 32. That attempted distinction is

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 18 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 24 of 28

unavailing, as many of the cited cases applied the "reasoned explanation" requirement to an agency's change in legal conclusions. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (applying "reasoned explanation" requirement to reversal in agency's interpretation of statutory term); *Ctr. for Biological Diversity*, 998 F.3d at 1067 (applying "reasoned explanation" requirement to agency's reversal of position as to whether species warranted protection under Endangered Species Act); *Sierra Club North Star Chapter v. LaHood*, 693 F. Supp. 2d 958, 973-74 (D. Minn. 2010) (applying "reasoned explanation" requirement to agency's reversal regarding permissibility of bridge under Wild and Scenic Rivers Act).

## VI. THE COURT SHOULD DECLARE UNLAWFUL, VACATE, AND ENJOIN EXECUTIVE ORDER 13990 § 4(A) AND THE MORATORIUM.

The Gwich'in Intervenors argue that, even if Defendants' actions are held unlawful, they should be remanded without vacatur. This Court should reject this argument and adhere to the presumptive remedy of vacatur. *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018).

Because the Moratorium is unauthorized, it cannot possibly be remedied through further explanation on remand. No matter what reasons the Agency Defendants may give for the Moratorium, they cannot create statutory authority that has not been bestowed by Congress. Moreover, Agency Defendants did not simply err in the implementation of the APA's and FLPMA's procedural requirements. They did not attempt to follow the requisite procedures at all. These fatal flaws bely the Gwich'in Intervenors' assertion

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 19 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 25 of 28

that "the errors . . . are not serious and can be remedied on remand." Gwich'in Resp. at 42.

The Gwich'in Intervenors further err in their argument that remand without vacatur is justified based on environmental harms that Gwich'in Intervenors have alleged in separate litigation challenging the Coastal Plain Leasing Program. *Id.* at 43-44. The Gwich'in Intervenors' challenge to the Leasing Program is beyond the scope of this action. Moreover, that separate litigation has been stayed since before the Moratorium was implemented, and there has been no judicial determination of legal flaws in the underlying environmental review. To the extent the Gwich'in Intervenors take issue with the adequacy of the environmental review, they must pursue such claims in the context of their own action against Agency Defendants. They may not graft presumptions of unlawfulness onto this case in an effort to avoid vacatur or injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its motion for summary judgment.

Dated this 20th day of March, 2023

*/s/ Kyle W. Parker*
Kyle W. Parker, ABA No. 9212124
William G. Cason, ABA No. 2009083
HOLLAND & HART LLP
420 L Street, Suite 550
Anchorage, Alaska 99501
Telephone:　(907) 865-2600
Facsimile:　(907) 865-2680
kwparker@hollandhart.com
wgcason@hollandhart.com

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 20 of 22

Bryson C. Smith (*Admitted pro hac vice*)
HOLLAND & HART LLP
645 S. Cache Street, Suite 100
P.O. Box 68
Jackson, WY 83001
Telephone:    (307) 739-9741
bcsmith@hollandhart.com

*Attorneys for Plaintiffs Alaska Industrial
Development and Export Authority, North Slope
Borough, Arctic Slope Regional Corporation,
and Kaktovik Iñupiat Corporation*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 21 of 22

Case 3:21-cv-00245-SLG   Document 67   Filed 03/20/23   Page 27 of 28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2023, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification and electronic service of the same to all counsel of record.

HOLLAND & HART LLP

*/s/ Kyle W. Parker*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
*AIDEA v. US Dept. of Interior, et al*, Case No. 3:21-cv-00245-SLG
Page 22 of 22