| | |
|---|---|
| David Karl Gross, ABA #9611065<br>James H. Lister, ABA #1611111<br>Birch Horton Bittner & Cherot<br>510 L Street, Suite 700<br>Anchorage, Alaska 99501<br>dgross@bhb.com<br>jlister@bhb.com<br>Telephone 907.275.1550<br>Facsimile 907.276.3680<br><br>*Attorneys for Plaintiffs Alaska Industrial Development and Export Authority, North Slope Borough, Arctic Slope Regional Corporation, and Kaktovik Inupiat Corporation* | TREG TAYLOR<br>ATTORNEY GENERAL<br>Ronald W. Opsahl (ABA # 2108081)<br>Assistant Attorney General<br>Department of Law<br>1031 W. 4th Avenue, Suite 200<br>Anchorage, AK 99501<br>ron.opsahl@alaska.gov<br>Telephone: (907) 269-5232<br>Facsimile: (907) 276-3697<br><br>*Attorneys for Intervenor-Plaintiff State of Alaska*<br><br>(See signature page for additional counsel) |

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, et al,<br><br>        Plaintiffs,<br>  and<br><br>STATE OF ALASKA,<br><br>        Intervenor-Plaintiff,<br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al.,<br><br>        Defendants,<br>  and<br><br>NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, et al.<br><br>        Intervenor-Defendants | Case No. 3:21-cv-00245-SLG<br><br>**PLAINTIFFS' AND INTERVENOR-PLAINTIFF'S MOTION TO ALTER OR AMEND SUMMARY JUDGMENT ORDER AND JUDGMENT** |

Case No. 3:21-cv-00245-SLG. *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement
Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 1 of 12

Plaintiffs Alaska Industrial Development and Export Authority, North Slope Borough, Arctic Slope Regional Corporation, and Kaktovik Inupiat Corp. and Intervenor-Plaintiff State of Alaska (collectively, "Plaintiffs") respectfully move under Fed.R.Civ.P. 59 to alter or amend the August 7, 2023 Order granting summary judgment ("Order") and the related Judgment (Dkts. 72 and 73).[1]

### A. Lease Implementation Actions that do not Impact the Environment, Such as Archeological and Other Surveys, Should Proceed.

1. Introduction.

In that Order, the Court affirmed the decision of the Federal Agency Defendants to suspend <u>all</u> actions necessary to implement the statutorily-mandated oil and gas leasing program (the "Program") on the Coastal Plain of the Arctic National Wildlife Refuge ("ANWR"). The Court in its analysis relied on statutory provisions and lease terms that address environment-impacting activities and so, however those terms are construed, do not support the Agency Defendants' overbroad application of their moratorium to block even non-environment-impacting preliminary steps such as conducting archeological surveys. *See* AR3394-3400 (refusal to authorize archeology survey, refusal to consider preliminary seismic application). The Order and Judgment should be amended to

---

[1] The "district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quotation omitted). "[M]anifest errors of law or fact" is a proper ground for grant of such a motion. *Id.*

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement                                  1

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 2 of 12

invalidate the Agency Defendants' moratorium to the extent that the moratorium blocks even non-environment-impacting preliminary steps like archeological surveys.[2]

Agency Defendants now forecast publishing a draft SEIS in September, 2023. *See* Order at 8. They earlier reported to the Court that it would take them one year from that point to publish a revised record of decision, which would be September, 2024. (Dkt. 85 at 5, Case 3:20-cv-00204-SLG). Archeology on the North Slope is done in a late summer window, in August of each year. By amending its Order and Judgment, the Court will facilitate Plaintiffs utilizing the August, 2024 window to conduct archeological surveys. This avoids the loss of almost an entire year that would occur if Plaintiffs, because of the overbroad moratorium imposed by Agency Defendants, cannot conduct archeological surveys until the next window after that, which is in August, 2025.[3] In addition to archeological surveys, Agency Defendants at multiple instances in the Record of Decision require Plaintiffs, as first steps, to conduct surveys and baseline studies that do not impact the environment. But Plaintiffs can only proceed in those first steps if approved by Agency Defendants, and so are blocked by the moratorium on the Program.[4]

---

[2] While Plaintiffs respectfully disagree with other aspects of the Order and Judgment, they limit Point A of this motion to alter or amend to non-environment-impacting activities.

[3] The Agency Defendants relied on the broad scope of the moratorium in declining to process permits for archeological survey work. AR3395. They alleged no environmental harm. *See id.; see also*, Plaintiff-Intervenor Reply Brief, Dkt. 66 at 16-17 ("no reason exists to implement the Moratorium while BLM prepares supplemental NEPA analysis. The Agency Defendants have not identified any adverse impacts that would result from continuing to implement the Program and, for example, from authorizing archeological surveys."); Plaintiffs' Reply Brief, Dkt. 67 at 13 (similar).

[4] *See* AR3207 ("The lessee/operator/contractor will conduct a cultural and paleontological resources survey before any ground-disturbing activity, based on a study designed by the

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement 2

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 3 of 12

### 2. Any Suspension Authority Borrowable from the NPRPA Does Not Apply to Pre-Operational Survey Work That Does Not Impact the Environment.

In its Order, the Court cited the Tax Act's direction that, "except as otherwise provided in this section," Federal Defendants should "manage the oil and gas program on the Coastal Plain in a manner similar to the administration of lease sales under the Naval Petroleum Reserves Production Act [NPRPA] of 1976, 42 U.S.C. § 6501, et seq. (including regulations)." Order at 21-22 (citing Tax Act, Pub. Law 115-97. § 20001(b)(3)). Citing a NPRPA provision under which "the Secretary [of the Interior] may direct or assent to the suspension of operations or productions on any lease or unit," 42 U.S.C. § 6506a(k)(2), the Court upheld the Agency Defendants' moratorium. *Id.*

Even if applicable, the borrowed NPRPA provision does not go so far as to authorize suspension of non-environment-impacting lease activities that are preliminary steps before operations under a lease even begin.[5] The very next sentence of the NPRPA contemplates the Secretary using the suspension power "in the interest of conservation,"

---

lessee/operator/contractor and approved by the BLM Authorized Officer."); *see also*, AR3163 ("Project proponents may be responsible for conducting or funding baseline studies, including fish, wildlife and vegetations surveys where applicable" as "determined by the BLM …."); AR3168 (subsistence impact avoidance planning); AR3194 (must "develop an impact and conflict avoidance an monitoring plan" for areas within two miles of the sea); AR3196 ("polar bear interaction plans" must be developed "in consultation with and approved by the USFWS …."); AR3197 (before filing site permit applications, lessee must obtain "a minimum of 1 year of baseline ambient air monitoring data for pollutants of concern, as determined by the BLM.")

  As can be seen from this list, the work Plaintiff seek to do now, pending the completion of the Agency Defendants' supplemental NEPA work, consists of activities such as walking the land, collecting imagery and other data using passive means, and conducting interviews and meetings within individuals inside ANWR, not digging or other ground-disturbing work.

[5] Plaintiffs showed that the NPRPA provision is not applicable to any of the issues in this case, Dkt. 67 at 14-16, but will not re-argue that larger issue in the context of this narrow motion.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement    3

which means to regulate environment-impacting actions, typically ground-disturbing activities. 42 U.S.C. § 6506a(k)(3). In an implementing rule, BLM defines the "circumstances" in which "BLM will require a suspension of operations and production" as being when suspension "(1) … is in the interests of *conservation of natural resources*; (2) … encourages the greatest ultimately recovery of oil and gas, such as by encouraging the planning and construction of a new transportation system …; or (3) … mitigates reasonably foreseeable and *significantly adverse effects on surface resources*." 43 CFR § 3135.2(a) (emphasis added). The NPRPA suspension provision and its implementing rule thus do not support the Order's conclusion that the Agency Defendants may use that provision to block the lessee's pre-operational non-environment-impacting activities such as archeological surveys. Moreover, the Agency Defendants who administer the Program did not invoke the NPRPA provision. AR3364-65. Only Defendant-Intervenors cited it.

An additional consideration is that archeological survey work and other early permitting stage work that does not involve any surface disturbance is pre-operational, and so is not "operations and production" within the scope of the NPRPA suspension provision, 42 U.S.C. § 6506a(k)(2).[6] In adopting the rule implementing the suspension

---

[6] *See* Summers Oil and Gas § 14:4 (3rd ed.) (collecting cases on what level of activity by the lessee is active enough to qualify as "operations" under an oil and gas lease). Although the NPRPA does not define "operations," a DOI regulation for non-Alaska NPS units places reconnaissance surveys" outside the definition of "operations." 36 CFR § 9.40(2). The Record of Decision in this case does not define "operations" but describes "operations" as occurring later in the Program, after environmental review is conducted, which strongly implies there are also pre-operational permitting stage activities, such as archeological surveys, that are not operations:

> "… [T]the BLM will consider alternatives to avoid adverse effects and incompatible development to protect the various cultural resources, subsistence resources and their habitat,

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement 4

Case 3:21-cv-00245-SLG Document 76 Filed 09/05/23 Page 5 of 12

provision, Federal Defendant BLM explained that "BLM is committed to addressing environmental and subsistence issues prior to any development. However, there may be unanticipated issues, such as undiscovered archaeological finds or endangered species, that may not be evident prior to operations commencing." 67 Fed.Reg. 17,866, 17,867 (April 11, 2002). Thus, the rule contemplates that archeological work would usually be completed "prior to operations commencing," i.e., that such work is not "operations."

   3. <u>Lease § 6 Only Addresses Environment-Impacting Operations</u>**.**

The Court's interpretation of Plaintiff AIDEA's lease contains a similar error. Although not briefed by the parties, the Court cited Lease § 6 as supporting its conclusion that the Agency Defendants may lawfully temporarily suspend lease activities to take steps to protect the environment. Order at 39-40. However, Lease § 6 is limited to preventing harm to the environment and thus to environment-impacting "operations":

> Sec. 6  Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or uses. To the extent consistent with the lease rights granted, lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. Such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and … reclamation measures. ….

AIDEA Lease, AR3321. Section 6 echoes the NPRPA suspension provision discussed above in that it does not address (or provide Agency Defendants with authority to suspend) pre-operational non-environment-impacting activities. If the preliminary

---

and human health and the environment, before any on-the-ground activities are approved. This will be done through subsequent NEPA analysis, which will be conducted ***before*** *any construction or **operation** permits or approvals are issued.*" AR3171 (emphasis added).

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement  5

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 6 of 12

actions under the ROD such as archeological and other surveys will not result in adverse impacts to the environment, suspension of those activities is not necessary or reasonable.[7]

### 4. Conclusion – Actions Not Impacting the Environment.

The Court earlier declined to grant project opponents a preliminary injunction preventing Agency Defendants from issuing the lease to Plaintiff AIDEA, distinguishing the non-ground-disturbing activities that would occur immediately following issuance of leases from the ground-disturbing activities that would only occur later, after further environmental analysis. *Gwich'in Steering Committee v. Bernhardt*, 2021 WL 46703, *8 (D. Alaska Jan. 5, 2021) (finding no irreparable harm). The Court should draw a parallel distinction here. It should amend its Order and Judgment and invalidate the Agency Defendants' overbroad moratorium to the extent it blocks Plaintiffs from conducting preliminary steps such as archeological surveys that do not impact the environment.

### B. The Order Infers Too Much From the Absence of Specific Statutory Deadlines Regarding Follow-Up Actions Implementing the Major Directed Action.

The Court relied on *Gen. Motors Corp. v. United States*, 496 U.S. 530 (1990), in discerning a dispositive contrast between: (1) the Tax Act provision mandating that Federal Defendants issue an oil and gas lease for the Coastal Plain by a date certain (December, 2021) and (2) other Tax Act provisions that mandated that the Federal

---

[7] Delay in carrying out non-environment-impacting surveys and baseline studies that are a necessary pre-requisite to seeking subsequent project approvals does substantially burden Plaintiffs. Order at 39. Such actions would not cause ground disturbance to any acreages or to subsistence hunting or fishing. *See* Order at 57 and n. 236 (discussing BLM's reconsideration of number of acres that may lawfully be subject to surface disturbance and ANILCA § 810 issues).

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement    6

Case 3:21-cv-00245-SLG    Document 76    Filed 09/05/23    Page 7 of 12

Defendants issue rights-of-ways and easements in connection with the lease, and take other actions to implement and administer the lease, but without specifying deadlines. Order at 18-19 and n. 78 (reviewing provisions in Pub. Law 115-97, § 20001). The Court concluded that the various post-leasing agency tasks were subject "only … to" the general Administrative Procedure Act requirement that agencies act within a "reasonable period of time." Order at 20 (citing 5 U.S.C. § 706(1)).

*General Motors* concerned a very different statutory structure and so its holding is not applicable here. The Clean Air Act ("CAA") expressly addressed in different ways the consequences of agency delay in performing two equally significant tasks, neither of which was ancillary of the other. The CAA set a four month deadline for the Environmental Protection Agency (EPA) to approve or reject a State's original proposal for air pollution rules (a "state implementation plan" or "SIP"). *Gen. Motors*, 496 U.S. at 536 (citing CAA § 110(a)(2), 42 U.S.C. § 7410(a) (1982)). The statute also addressed the possibility of delay in a second EPA task, EPA's approval or rejection of a State's proposal to <u>revise</u> an approved SIP. *Id.*, 496 U.S. at 538 (citing CAA § 110(g)). The CAA granted a specific remedy for EPA delay in approving or rejecting a revised SIP – the State's Governor could issue a short-term suspension of industry's duty to comply with the approved original SIP. *See id.* (quoting CAA § 110(g)(1)(B)).

General Motors asked the Supreme Court to imply an additional remedy, that when EPA was late in approving or rejecting a proposed revised SIP, EPA was barred from enforcing the original SIP, apparently even after the express statutory remedy (the

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement  7

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 8 of 12

short-term suspension) had expired.  *See id*. at 539-40.  The Supreme Court declined, holding that the EPA was not under a four month deadline to process proposals to revise SIPs, that a rule of reasonableness governed delays, and that it could not be implied that EPA was barred from enforcing the original SIP even if EPA had unreasonably delayed.  *See id*.  *Gen. Motors* illustrates the canon that when a statute addresses related topics in differing ways, the differences are presumed to be meaningful.  However, its holding was based on statute that expressly addressed in different ways the consequence of delays in two equally significant and parallel agency tasks (deciding whether to approve original SIPs and deciding whether to approve revised SIPs).  That is not the situation here.

By contrast, the Tax Act establishes a specific deadline for the major action, the issuance of oil and gas leases, and directs the Federal Defendants to then take ancillary follow-up actions, including the issuance of "necessary rights-of-way or easements" and the "administration" of the program, without addressing the scenario of delay in the follow-up implementing actions.  Tax Act, Pub. Law. 115-97, § 20001(b)(2)(A), (c)(1)(B) and (c)(2).  Under this structure, a different canon of statutory construction controls, the canon that a statutory direction or authority to take a main action implies the authority and duty to take the variously ancillary actions necessary to make the main action effective.  Sutherland calls it the "Implied Powers" canon:

> A statute which confers powers or *duties* in general terms includes by implication all powers and *duties* incidental and necessary to make the legislation effective.

2B Sutherland Statutory Construction, § 55:4 (7th ed.) (emphasis added).  [W]henever a power is given by a statute, everything necessary to making it effectual or requisite to

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement                8

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 9 of 12

attaining the end is implied." Antonin J. Scalia and Bryan A. Garner, Reading Law, the Interpretation of Legal Texts at 60 (Thompson/West, 2012) (quotation omitted). There are many examples illustrating this canon. *See, e.g.*, *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("The Second Amendment … does not explicitly protect ammunition. Nevertheless, without bullets, the right to bear arms would be meaningless. … Thus the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them.") (quotation omitted).[8]

As Sutherland further explains, legislation cannot be expected to address "peripheral matters" in the same level of detail as the main matter:

> Courts extend statutes by implication and inference because legislation cannot practically or conveniently, or perhaps even possibly, specify all of the detailed operational effects it should have in all of the various circumstances to which it may apply. For this reason, statutory language tends to focus on a central idea, or to establish general principles or standards. Legislation often does not mention peripheral matters, or matters of minor detail, and if these could not be supplied by implication the drafting of legislation would be an interminable process and the true intent of the legislature likely to be defeated

*Id.*, § 55:2 (quotation omitted). Thus, the absence in the Tax Act of detail with regard to peripheral matters such as the limits or consequences of delays in issuing the mandatory easements necessary to implement the Coastal Plain oil and gas leases, or the timing or content of agency actions regarding archeology surveys to be conducted at the outset of the post-leasing implement process, should not be accorded the dispositive significance

---

[8] Second Amendment law has since evolved, *Warren v. U.S. Parole Commission*, 2023 WL 5348825, *1 (9th Cir. Aug. 21, 2023), but the statutory construction principle remains.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement            9

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 10 of 12

the Court in this case accorded that absence.  *See* Order at 18-19.

Unlike the statute involved in *Gen. Motors*, *supra*, the Tax Act does not address one way or another the consequence of delay in the various implementing actions that follow-up the issuance of the lease, but does mandate that the follow-up actions occur, thereby effectuating the key directive in Tax Act § 20001(c)(1) to issue the leases.  *See* Tax Act § 20001(b)(2)(A) (Federal Defendants "shall … administer" all phases of the Program, which includes the post-lease follow-up actions), (c)(2) (Federal Defendants "shall issue any rights-of-way or easements across the Coastal Plain for the exploration, development, production or transportation necessary to carry out this section").  The Court should amend its Order and Judgement and recognize that the various follow-up matters ancillary to the issuance of the leases by the December, 2021 statutory deadline must be addressed by the Federal Defendants with an urgency and timeliness proportional to the statutory deadline for the issuance of the leases.

### C.  Conclusion

The Court should amend its Order and Judgment to (1) set aside with respect to non-environment-impacting steps the Federal Defendant's moratorium on actions to implement the ANWR Coastal Plains oil and gas program, and (2) direct the Federal Defendants to carry out actions necessary to implement the oil and gas leases held by Plaintiff AIDEA at a pace proportional to the urgency expressed by Congress in directing that the Federal Defendants issue oil and gas leases by December, 2021.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement            10

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 11 of 12

Respectfully submitted this 5th day of September, 2023.

/s/ David K. Gross
David K. Gross, ABA # 9611065
Zoe A. Eisberg, ABA # 1911094
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: (907) 802-2998
Facsimile: (907) 276-3680
dgross@bhb.com
zeisberg@bhb.com

/s/ James H. Lister
James H. Lister, ABA # 1611111
Brian V. Gerd, ABA #1810097
1150 Connecticut Ave NW, Suite 350
Washington, DC 20036
Telephone: (202) 862-8368
Facsimile: (202) 659-1027
jlister@bhb.com
bgerd@bhb.com

*Attorneys for Plaintiffs Alaska Industrial Development and Export Authority, North Slope Borough, Arctic Slope Regional Corporation, and Kaktovik Inupiat Corporation*

/s/ Ronald W. Opsahl
TREG TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (ABA # 2108081)
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
ron.opsahl@alaska.gov

Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
gail.wurtzler@dgslaw.com
mark.champoux@dgslaw.com
nick.peppler@dgslaw.com

*Attorneys for Intervenor-Plaintiff State of Alaska*

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Final Judgement                    11

Case 3:21-cv-00245-SLG   Document 76   Filed 09/05/23   Page 12 of 12