TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 ‖ 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, *et al.*,<br><br>   Plaintiffs,<br> and<br><br>STATE OF ALASKA,<br><br>   Intervenor-Plaintiff,<br> v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>   Defendants,<br> and<br><br>NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, *et al.*,<br><br>   Intervenor-Defendants. | Case No. 3:21-cv-00245-SLG |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AND INTERVENOR-PLAINTIFF'S MOTION TO VACATE

Before the Court is a new post-judgment motion, ECF No. 84 ("Motion"), by Plaintiffs Alaska Industrial Development and Export Authority ("AIDEA"), et al., and Intervenor-Plaintiff State of Alaska (collectively "Movants"), seeking to "vacate" the Court's decision and judgment, ECF Nos. 72, 73, under Federal Rule of Civil Procedure 60(b). *See* Motion 3.[1] The Court should deny the Motion because AIDEA has failed to demonstrate that this case is moot or that equitable considerations support vacatur.

The most recent Motion hinges on the contention that, following cancellation of AIDEA's leases, Plaintiffs lack any remedy "in response to the Rule 59(e) motion or upon appeal." Motion 4. Plaintiffs therefore contend the case is moot. But this case is not singularly focused on AIDEA's leases. It was instead brought by four different Plaintiffs and Intervenor-Plaintiff State of Alaska against a purported "moratorium" temporarily halting action to implement the Bureau of Land Management ("BLM") Arctic Refuge Coastal Plain Oil and Gas Leasing Program (the "Program"). *Alaska Indus. Dev. & Exp. Auth. v. Biden* (*AIDEA*), __ F. Supp. 3d __, No. 3:21-cv-00245-SLG, 2023 WL 5021555, at *1 (D. Alaska Aug. 7, 2023) (characterizing the case as involving "Plaintiffs and the State challeng[ing]" actions by the President and Department of the Interior "to place a temporary moratorium" on the Program).

A party contending a case is moot faces a heavy burden. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the

---

[1] Movants previously filed a motion seeking to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), ECF No. 76. Throughout this response, the citations to pleadings refer to the ECF-stamped page numbers from the docket.

prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks and citation omitted); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (discussing whether events rendered moot a case on appeal). But "courts of equity have broad discretion in shaping remedies," *Garcia v. Lawn,* 805 F.2d 1400, 1403 (9th Cir. 1986), and a court looks not to whether all relief originally requested remains available, but "'whether there can be *any* effective relief.'" *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988) (quoting *Garcia*, 805 F.2d at 1403); *see also Nat'l Audubon Soc'y v. Haaland*, No. 3:20-CV-00206-SLG, 2023 WL 5984204, at *13 (D. Alaska Sept. 14, 2023) (declining to find case moot when "effective relief is still available to Plaintiffs").

Contrary to the Motion's sole focus on AIDEA's leases, this case challenges a purported "moratorium" on the Program. Plaintiffs framed their case to challenge Executive Order 13990, Secretarial Order 3401, and agency "actions in furtherance thereof[.]" Pls.' Mot. for Summ. J. 15, ECF No. 60. Consistent with the broad scope of their seven claims, Plaintiffs requested a range of relief, including vacatur of Secretarial Order 3401, lease suspensions, and suspensions on processing other applications for oil and gas activities. *Id*. 40. Plaintiffs additionally requested an injunction "compelling Defendants" to "cease implementing the unlawful Moratorium[.]" *Id*. Indeed, the Prayer for Relief of the Second Amended Complaint mentions "leasing" only once, while presenting seven clauses seeking declaratory relief and four clauses seeking injunctive relief. *See* Second Am. Compl. 40-42, ECF No. 34; *see also AIDEA*, 2023 WL 5021555, at *3. The Court analyzed the cross-motions for summary judgment according to

Plaintiffs' framing of the case, considering the "Moratorium" to include "issuance of Secretarial Order 3401, the [Lease Suspension] Letter, the responses to AIDEA and its contractors' attempts to conduct oil-and-gas-related activities on the lands leased pursuant to the Program, and the withholding of any further actions to implement the Program pending the ongoing NEPA review." *Id*. at *4. And it correctly denied each of these claims and remedies on the merits.

Against this backdrop, Movants – as the parties seeking to show mootness – have not shown that Defendants' *lease cancellation* decision makes it "impossible for a court to grant any effectual relief whatever." *Knox*, 567 U.S. at 307. While Movants contend that the lease cancellation decision leaves them without any possible relief "in response to the Rule 59(e) motion or upon appeal," Motion 4, the Motion fails entirely to draw any connection between that lease cancellation decision and the other broader claims and remedies sought in the Second Amended Complaint. Movants' contention, moreover, is belied by the Rule 59(e) motion itself, which is not limited to lease-related remedies but instead asks the Court to also revisit its analysis of the timing requirements of the Tax Act. *See* Pls.' and Intervenor-Pl's. Mot. to Alter or Amend 7-10, ECF No. 76.

Also relevant, but ignored by the Motion, is the continuing presence of Plaintiffs other than AIDEA who rely for jurisdiction on their own interests in the broader Program. For example, Plaintiff Kaktovik Iñupiat Corporation ("KIC") describes the effect of the Moratorium on the ability of its affiliate SAExploration to perform contracted work in development of AIDEA's leases, *see* Decl. of Charles Lampe ¶¶ 6-11, ECF No. 60-2, but "[b]eyond the harm to KIC as a result of BLM's suspension of

*AIDEA v. Biden*  
DEFS.' RESP. IN OPP'N TO PLS.' MOT. TO VACATE

Case No. 3:21-cv-00245-SLG  
4

Case 3:21-cv-00245-SLG   Document 89   Filed 11/07/23   Page 4 of 9

AIDEA's leases, the moratorium prevents KIC from performing its own Coastal Plain seismic operations," *id.* ¶ 13; *see also* AR 3711-13; 3718-19. KIC's alleged injury relates to "the refusal to process these applications because it precludes KIC from obtaining valuable data regarding potential oil and gas reserves on its own lands." Lampe Decl. ¶ 13. And KIC further alleges that continuation of the "Moratorium" causes harm to its interests in development of its land under the Tax Act. *Id.* ¶ 14. The other Plaintiffs provide similar declarations describing their distinct interests in implementation of the overall Program. *See* Decl. of Rex A. Rock, Sr., ECF No. 60-3, (Arctic Slope Regional Corp.); Decl. of Harry Brower Jr., ECF No. 60-4 (North Slope Borough). And attaining Intervenor-Plaintiff status required the State of Alaska to demonstrate not only that it possessed a distinct legal interest in the subject matter of this dispute, but that the four primary Plaintiffs did not adequately represent Alaska's interests. *See* Mot. to Intervene 10-13, ECF No. 9. This diversity of plaintiffs and asserted interests belies the Motion's contention that this case was only about AIDEA's leases, such that it was mooted solely by virtue of the cancellation decision.

Aside from mootness, Plaintiffs' vacatur analysis is similarly flawed. There is not an "automatic" vacatur rule as Plaintiffs suggest. Motion 7. The relevant cases "make[ ] clear that the touchstone of vacatur is equity." *Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995). The Motion tries to compare this to cases "'where mootness results from the unilateral action of the party who prevailed in the lower court.'" Motion 8 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)). But only by singularly focusing on AIDEA's leases does the Motion claim the case is moot. Under

these circumstances, the Court could properly find that the equitable principles justifying vacatur under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), instead "cut the other direction" because "the appellant by his own act [is] prevent[ing] appellate review of the adverse judgment." *Dilley*, 64 F.3d at 1370; *see also Am. Civil Liberties Union of Nev. v. Masto*, 670 F.3d 1046, 1065–66 (9th Cir. 2012) (declining vacatur when "the live case was resolved by the strategic decision of the appealing party"). And doing so fails to "take account of the public interest" in maintaining "'judicial precedents [that] are presumptively correct and valuable to the legal community as a whole.'" *Bonner Mall*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27 (1993) (Stevens, J., dissenting)). These considerations counsel against vacatur here.

Finally, Rule 60(b) offers nothing to save the Motion. Plaintiffs' assertion of "an extraordinary circumstance" arises from their mischaracterization "that no cancellation of AIDEA's leases would occur until after the completion of a full, supplemental [National Environmental Policy Act ("NEPA")] process." Motion 10. But again, this argument misunderstands the record. The Department of the Interior advised AIDEA that BLM was "conducting the additional NEPA analysis to determine whether the leases should be affirmed, voided, or subject to additional mitigation measures. *Once sufficient information is developed*, the BLM will issue a new decision[.]" AR 3405 (emphasis added). And Plaintiffs cite no authority for the proposition that AIDEA was entitled to "an opportunity to defend against the cancellation." Motion 11. Even if AIDEA had such an opportunity, its "defense" would be futile. As Defendants conceded in briefing,

Defs.' Opp'n 32-33, ECF No. 63, and at argument, the downstream greenhouse gas emissions analysis supporting the Program Record of Decision has proven to be inadequate. While this inadequacy arises from *Center for Biological Diversity v. Bernhardt*, 982 F.3d 723 (9th Cir. 2020), the reasoning of that case has been extended by this Court to onshore oil and gas decision-making in the nearby National Petroleum Reserve – Alaska. *See Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 555 F. Supp. 3d 739, 762-67 (D. Alaska 2021); *see also* AR 3404-05.[2]

Plaintiffs erroneously further suggest that lease cancellation "reflects a tactical decision by Federal Defendants" marking a "depart[ure] from [Defendants'] prior course of action" only after prevailing on summary judgment. Motion 11-12. But again, Plaintiffs misunderstand the relation and sequence of events. It was not the Court's decision that prompted the lease cancellation decision, *id*. 12, but the information developed and presented in the Draft Supplemental Environmental Impact Statement. And Plaintiffs' accusations ring hollow in light of the recent effort by AIDEA, *see* Case No. 1:23-cv-03126 (D.D.C.), to seek relief in the United States District Court for District of Columbia on theories and arguments that were analyzed and decided in this Court's

---

[2] Plaintiffs' insinuation that lease cancellation blindsided the parties or the Court is also incorrect. The Court fully recognized that review under the Moratorium might result in lease cancellation but properly noted that the propositions "whether Agency Defendants have the authority to cancel any leases and under what circumstances [were] not before this Court" at summary judgment. *AIDEA*, 2023 WL 5021555, at *25. And the Court found rational Defendants' concerns about the greenhouse gas emissions analysis undergirding the Program, and found it "particularly reasonable to pause the Program at this early stage" to reduce the commitment of resources in what turned out to be legally flawed leases. *Id*. at *22-23.

summary judgment decision. *See* Compl. ¶¶ 46-52, ECF No. 85-1 (alleging violation of Tax Act), ¶ 57 (alleging that "[t]he issue of the downstream effect of greenhouse gases also does not justify termination of AIDEA's leases"). Specifically, the relief AIDEA seeks in that new complaint includes requiring the Department of the Interior to lift the Program "Moratorium." *Id.* at 26 (seeking "[a]n order directing Defendants to proceed with leasing, exploration, and development of the ANWR Coastal Plain as prescribed in the Tax Act, § 20001"). AIDEA appears, through the Motion, to be asking this Court to vacate its opinion so that AIDEA can revisit at least some of the issues on a cleaner slate in another district court.

In sum, the Department of the Interior's decision to cancel AIDEA's leases was based on information developed during the environmental review confirming the seriousness of the identified pre-leasing legal defects. The Motion's vacatur analysis misses the mark and Movants fall short of their heavy burden to demonstrate that the lease cancellation decision rendered the instant case moot; a case through which AIDEA, the North Slope Borough, Arctic Slope Regional Corporation, KIC, and State of Alaska sought declaratory and injunctive relief addressing Defendants' implementation of the Program.

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' and Intervenor-Plaintiff's Motion to Vacate.

DATED: November 7, 2023.  TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*AIDEA v. Biden*  Case No. 3:21-cv-00245-SLG
DEFS.' RESP. IN OPP'N TO PLS.' MOT. TO VACATE  8

Case 3:21-cv-00245-SLG    Document 89    Filed 11/07/23    Page 8 of 9

/s/ Paul A. Turcke
PAUL A. TURCKE
Trial Attorney
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

Of Counsel:

MIKE GIERYIC
Attorney Advisor
Office of the Regional Solicitor, Alaska Region
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-1420
mike.gieryic@sol.doi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

/s/ Paul A. Turcke
Paul A. Turcke