IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, *et al.*, <br><br>   Plaintiffs, <br><br> and <br><br>STATE OF ALASKA, <br><br>   Intervenor-Plaintiff, <br><br> v. <br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br>   Defendants, <br><br> and <br><br>NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, *et al.*, <br><br>   Intervenor-Defendants. | Case No. 3:21-cv-00245-SLG |

**ORDER RE MOTION TO ALTER OR AMEND SUMMARY JUDGMENT ORDER AND JUDGMENT AND MOTION FOR RELIEF FROM FINAL JUDGMENT**

  Before the Court at Docket 76 is Plaintiffs' and Intervenor-Plaintiff's[1] Motion to Alter or Amend Summary Judgment Order and Judgment. Defendants[2]

---

[1] Plaintiffs consist of Alaska Industrial Development and Export Authority ("AIDEA"), North Slope Borough, Arctic Slope Regional Corporation, and Kaktovik Iñupiat Corporation. Intervenor-Plaintiff is the State of Alaska ("State").

[2] Defendants consist of the President, U.S. Department of the Interior ("DOI" or "Interior"), DOI

responded in opposition at Docket 79, and Intervenor-Defendants[3] responded in opposition at Docket 80. Plaintiffs and Intervenor-Plaintiff filed a reply at Docket 83. Also before the Court at Docket 84 is Plaintiffs' and Intervenor-Plaintiff's Motion for Relief from Final Judgment. Defendants responded in opposition at Docket 89, and Intervenor-Defendants responded in opposition at Docket 90. Plaintiffs and Intervenor-Plaintiff filed a reply at Docket 93. Plaintiffs and Intervenor-Plaintiff are hereinafter collectively referred to as "Plaintiffs"; Defendants and Intervenor-Defendants are hereinafter collectively referred to as "Defendants." Oral argument was not requested on either motion and was not necessary to the Court's determination.

## BACKGROUND

The facts of this case are set forth in the Court's order at Docket 72; the Court assumes familiarity here and includes only the relevant facts below. In December 2017, Congress authorized an oil and gas leasing program ("Program")

---

Secretary Deb Haaland, DOI Principal Deputy Assistant Secretary of Land and Minerals Management Laura Daniel-Davis, Bureau of Land Management ("BLM"), BLM Director Tracy Stone-Manning, and BLM Alaska State Director Steven Cohn (collectively, "Federal Defendants"). The original complaint named Thomas Heinlein, the then BLM Alaska State Director, as a defendant. Pursuant to Fed. R. Civ. P. 25(d), the current BLM Alaska State Director, Steven Cohn, is automatically substituted for Thomas Heinlein.

[3] Intervenor-Defendants consist of two groups: the Native Village of Venetie Tribal Government, Venetie Village Council, and Arctic Village Council ("Venetie Movants"); and the Gwich'in Steering Committee, Alaska Wilderness League, Alaska Wildlife Alliance, Canadian Parks & Wilderness Society-Yukon, Defenders of Wildlife, Environment America, Inc., Friends of Alaska National Wildlife Refuges, National Wildlife Federation, National Wildlife Refuge Association, Northern Alaska Environmental Center, Sierra Club, The Wilderness Society, and Wilderness Watch ("Gwich'in Movants") (collectively, "Intervenor-Defendants"). *See* Docket 40.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 2 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 2 of 19

on the Coastal Plain of the Arctic National Wildlife Refuge ("Coastal Plain" or "ANWR") through Section 20001 of the Tax Cuts and Jobs Act of 2017 ("Tax Act").[4] Section 20001(c)(1) requires the Secretary of the U.S. Department of the Interior ("DOI" or "Interior") to conduct at least two area-wide lease sales under this program of at least 400,000 acres each; the Secretary "shall offer" the first lease sale not later than December 22, 2021, and the second sale not later than December 22, 2024.[5] Pursuant to the National Environmental Policy Act ("NEPA"), the Bureau of Land Management ("BLM") reviewed the Program and published an Environmental Impact Statement ("EIS") in September 2019; the Record of Decision ("ROD") was published in August 2020.[6] The first lease sale then took place on January 6, 2021, and Alaska Industrial Development and Export Authority ("AIDEA"), one of the Plaintiffs in this action and one of three bidders, secured leases for seven tracts of land.[7]

However, when President Biden took office two weeks later, he issued Executive Order ("EO") 13990, which directed DOI to conduct a supplemental

---

[4] Pub. L. No. 115-97, 131 Stat. 2054 (2017) [hereinafter Tax Act].

[5] See Tax Act § 20001(c)(1)(B)(ii)(I), (II).

[6] Administrative Record ("AR") 1-3135, 3138-3225. Federal Defendants filed the Administrative Record at Docket 48, Docket 53, and Docket 56.

[7] Two other bidders, Knik Arm Services, LLC, and Regenerate Alaska, Inc., each secured one tract of land. AR 3314-18, 3347, 3689, 3695. However, these two lessees eventually entered into agreements with BLM in which BLM cancelled and rescinded their leases and refunded their bid and initial rental payments. AR 3782-92.

Case No. 3:21-cv-00245-SLG, AIDEA, et al. v. Biden, et al.
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 3 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 3 of 19

environmental review of the Program and, during the pendency of such review, temporarily halt all activities related to the Coastal Plain oil and gas leases (the "Moratorium").[8] Following the President's directive, on June 1, 2021, the Interior Secretary issued Secretarial Order 3401 ("Secretarial Order"), which instructed DOI and BLM officials to conduct the supplemental environmental review and instituted a "temporary halt on all Department activities related to the Program in the Arctic Refuge" while that supplemental review was being conducted.[9] The temporary halt extended to "any action[s] to authorize any aspect of the Program, including, but not limited to, any leasing, exploration, development, production, or transportation," and the "process[ing of] any pending or future applications for such activities."[10] Also on June 1, 2021, DOI issued a Suspension of Operations and Production Letter ("SOP Letter") to each of the lessees, notifying them it was suspending the leases and associated operations pending the supplemental NEPA review.[11]

While BLM conducted its supplemental NEPA review, AIDEA, through its contractors, sought authorizations from DOI to begin the initial stages of oil and gas exploration pursuant to its leases, such as conducting archeological

---

[8] AR 3349-55.

[9] AR 3362.

[10] AR 3363.

[11] AR 3364-65, 3714-17.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 4 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 4 of 19

investigations and seismic exploration.[12]  Citing the Moratorium, Federal Defendants refused to authorize AIDEA or its contractors to proceed with any activities relating to the leases.[13]  AIDEA then brought this suit in November 2021, challenging both the President's issuance of EO 13990 and DOI's implementation of the Moratorium.[14]  The other Plaintiffs in this action—North Slope Borough, Arctic Slope Regional Corporation ("ASRC"), and Kaktovik Iñupiat Corporation ("KIC")—and Intervenor-Plaintiff State of Alaska ("State") all asserted that the Moratorium caused loss of revenue and employment opportunities that would have come from development of the Coastal Plain oil and gas leases.[15]

In August 2023, the Court issued an order and final judgment dismissing all of Plaintiffs' claims with prejudice.[16]  The Court held that (1) "the President acted in accordance with his powers by ordering Agency Defendants to implement a

---

[12] AR 3370-98.

[13] AR 3399-3400.

[14] Docket 1.

[15] See Docket 60-4 at ¶¶ 11, 14, 17 (Decl. Harry Brower Jr.) (describing loss of revenue and employment opportunities due to Moratorium); Docket 60-3 at ¶ 10 (Decl. Rex A. Rock, Sr.) ("The moratorium has directly resulted in the loss of employment opportunities for ASRC shareholders.  Second, the moratorium has directly denied ASRC the opportunity to increase its revenues."); Docket 60-2 at ¶¶ 6, 11 (Decl. Charles Lampe) (explaining that KIC was a subcontractor for SAExploration Inc., one of AIDEA's contractors for its Coastal Plain oil and gas leases, and stating that the Moratorium caused loss of revenue and employment opportunities); Docket 59-1 at ¶¶ 3-5 (Decl. Vasilios Gialopsos) (describing loss of rental and royalty revenue and employment opportunities due to Moratorium).

[16] *Alaska Indus. Dev. & Exp. Auth. v. Biden*, __ F. Supp. 3d ___, Case No. 3:21-CV-00245-SLG, 2023 WL 5021555, at *29 (D. Alaska Aug. 7, 2023) [hereinafter *AIDEA I*]; Docket 73.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 5 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 5 of 19

temporary moratorium while DOI undertook to correct 'alleged legal deficiencies' in its environmental analysis"; and (2) the Moratorium did not violate the Administrative Procedure Act ("APA").[17] In its ruling, the Court noted that the Moratorium only temporarily prevented AIDEA from developing its leases, and that its leases had not been "cancelled, rescinded, nullified, or otherwise undone."[18]

On September 5, 2023, Plaintiffs filed their Motion to Alter or Amend Summary Judgment Order and Judgment, requesting that the Court "invalidate the . . . moratorium to the extent it blocks Plaintiffs from conducting preliminary steps such as archeological surveys that do not impact the environment," and that it "direct the Federal Defendants to carry out actions necessary to implement the oil and gas leases held by Plaintiff AIDEA at a pace proportional to the urgency expressed by Congress in directing that the Federal Defendants issue oil and gas leases by December[] 2021."[19] One day later, on September 6, 2023, DOI sent AIDEA a letter stating that it was cancelling AIDEA's Coastal Plain leases because DOI had "determined that the leases were improperly issued due to pre-leasing legal defects."[20] On the same day, BLM released its Draft Supplemental EIS

---

[17] *AIDEA I*, 2023 WL 5021555, at *16.

[18] *Id.* at *25, 27 (noting that "the issues of whether Agency Defendants have the authority to cancel any leases and under what circumstances are not before this Court").

[19] Docket 76 at 7, 11.

[20] Docket 79-1 at 1. DOI added that AIDEA was "entitled to a refund of lease payments [comprised of lease sale bonus bids and first year rentals] totaling $12,801,425," but that it was "not entitled to interest on that amount." Docket 79-1 at 7.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 6 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 6 of 19

("SEIS") for the Coastal Plain oil and gas leasing program,[21] and Federal Defendants stated in a related case that they anticipate the Final SEIS to be issued in the first quarter of 2024, with the ROD issued in the second quarter of 2024.[22]

Plaintiffs then asserted that the lease cancellation made moot their previous motion to amend the summary judgment order, and they filed a Motion for Relief from Final Judgment, asserting that the lease cancellation also made moot all of their claims in this action.[23] "In the absence of any leasehold interest," Plaintiffs maintain that they "lack the ability to pursue development on the Coastal Plain" and that their "claims in this case, and any potential claims on appeal, have been rendered moot."[24] Plaintiffs seek vacatur of the Court's judgment dismissing Plaintiffs' claims.[25] In response, Defendants assert that the Court should deny the motion because the case is not moot.[26]

In addition, Plaintiffs filed another suit in October 2023 in the United States

---

[21] The Draft SEIS and related documents can be found at https://eplanning.blm.gov/eplanning-ui/project/2015144/570. *See also* Notice of Availability of the Draft Coastal Plain Oil and Gas Leasing Program Supplemental Environmental Impact Statement, 88 Fed. Reg. 62104-01 (Sept. 8, 2023).

[22] *See* Defendants' Status Report on Issuance of Draft Supplemental Environmental Impact Statement at 2, *Gwich'in Steering Comm. v. Haaland*, Case No. 3:20-cv-00204-SLG (D. Alaska Sept. 6, 2023), ECF No. 98.

[23] Docket 83 at 3 ("Federal Defendants are correct that lease cancellation does overtake the present Motion."); Docket 84 at 2.

[24] Docket 84 at 3.

[25] Docket 84 at 3-4.

[26] Docket 89 at 2; Docket 90 at 3.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 7 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 7 of 19

District Court for the District of Columbia regarding the lease cancellation, wherein they requested "[a] declaratory judgment invalidating DOI's cancellation of AIDEA's leases" and "[a]n order directing, on a preliminary and final basis, that Defendants proceed with leasing, exploration, and development of the ANWR Coastal Plain as prescribed in the Tax Act, § 20001."[27] For the reasons discussed below, the Court finds that this case is not moot, and it denies Plaintiffs' motions.

## LEGAL STANDARD

The Court first addresses Plaintiffs' Motion for Relief from Final Judgment and then addresses Plaintiffs' Motion to Alter or Amend Summary Judgment Order and Judgment.

### I. Federal Rule of Civil Procedure 60(b)

Plaintiffs seek relief from judgment pursuant to Rule 60(b)(5) or, alternatively, 60(b)(6).[28] Rule 60(b)(5) authorizes relief from a judgment when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Rule 60(b)(6) authorizes relief from a final judgment or order for "any other reason that justifies relief." The moving party "bears the burden of proving the existence of a justification for Rule 60(b) relief."[29]

---

[27] Amended Complaint at 31, *Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of the Interior*, Case No. 1:23-cv-03126-JMC (D.D.C. Jan. 16, 2024), ECF No. 11.

[28] Docket 84 at 3-4.

[29] *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988) (citations omitted); *see also Atchison,*

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 8 of 19
Case 3:21-cv-00245-SLG    Document 97    Filed 02/22/24    Page 8 of 19

## II. Federal Rule of Civil Procedure 59(e)

Pursuant to Rule 59(e), a party may move to alter or amend a judgment no later than 28 days after the entry of the judgment. "[T]he district court enjoys considerable discretion in granting or denying the motion," but "amending a judgment after its entry remains 'an extraordinary remedy which should be used sparingly.'"[30] "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted," though a court "is not limited merely to these four situations":

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.[31]

"A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."[32]

---

*Toreka & Santa Fe Ry. Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957) ("[T]here still exists a definite burden on the moving party to prove the existence of the fraud, or other misconduct, or other cause for relief.").

[30] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir.1999) (en banc) (per curiam)).

[31] *Id.* (citations omitted).

[32] *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted).

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 9 of 19

Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 9 of 19

## DISCUSSION

I. **Motion for Relief from Final Judgment**

In their Rule 60(b) motion, Plaintiffs contend that their seven claims—"five of which challenged the Coastal Plain Moratorium generally (Counts I, II, IV, VI, and VII) and two of which challenged actions taken by DOI/BLM specific to AIDEA's leases (Counts III and V)"—have been rendered moot by the lease cancellation.[33] Plaintiffs assert that, but for the lease cancellation, they "would have appealed from the Court's final order."[34] However, Plaintiffs maintain that

> [e]ven if the Ninth Circuit were to reverse the summary judgment decision, the reinstatement of AIDEA's leases would not be the result, nor would AIDEA or its contractors be permitted to begin archaeological or seismic activities on the leased lands, or further oil and gas development activities, as it no longer holds any leasehold interest to such lands.[35]

Plaintiffs further contend that the relief they sought in this case—lifting the Moratorium—would not "allow Plaintiffs to engage in ground-disturbing lease implementation activities," because "AIDEA and its contractors have no right to develop the Coastal Plain without leases."[36] Citing *United States v. Munsingwear, Inc.*, Plaintiffs assert that the mootness of their claims requires vacatur under Rule

---

[33] Docket 84 at 4; *see also* Docket 34 at ¶¶ 119-55 (2d Am. Compl.).

[34] Docket 84 at 3.

[35] Docket 84 at 4-5.

[36] Docket 84 at 5.

Case No. 3:21-cv-00245-SLG, AIDEA, et al. v. Biden, et al.
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 10 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 10 of 19

60(b)(5), which allows for relief when applying the judgment prospectively "is no longer equitable."[37] In *Munsingwear*, the United States asserted that Munsingwear had violated a price fixing regulation for a certain commodity.[38] However, the commodity became decontrolled while the case was on appeal, rendering the case moot.[39] The Supreme Court held that "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot . . . is to reverse or vacate the judgment below and remand with a direction to dismiss."[40] Plaintiffs also assert that vacatur is warranted pursuant to Rule 60(b)(6), which authorizes relief for "any other reason that justifies relief," because the lease cancellation "was an abrupt final decision by the agency" which "occurred without providing AIDEA or the other Plaintiffs with an opportunity to defend against the cancellation."[41]

Defendants disagree that the case is moot. Defendants stress that the challenged Executive Branch actions in this case—that is, the Moratorium on all permitting of any oil and gas activities on the Coastal Plain—remain in effect.[42]

---

[37] *See* Docket 84 at 7-9 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)); Docket 93 at 2-5.

[38] *Munsingwear*, 340 U.S. at 37.

[39] *Id.*

[40] *Id.* at 39.

[41] *See* Docket 84 at 9-13.

[42] Docket 90 at 3.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 11 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 11 of 19

Defendants contend that "only by singularly focusing on AIDEA's leases" do Plaintiffs claim that the case is moot, but that Plaintiffs other than AIDEA have "their own interests in the broader Program" that were not mooted by cancellation of AIDEA's leases.[43] Defendants point out that KIC, ASRC, and the North Slope Borough have economic and employment interests in the "implementation of the overall Program," which is currently on hold due to the Moratorium.[44] And Defendants assert that because AIDEA is seeking the same form of relief in its suit in the District of Columbia—an order requiring development of the Coastal Plain, which is, in effect, the same relief as lifting the Moratorium sought here—AIDEA's actions belie its claims that the case is moot.[45] Thus, because this case challenged the Moratorium, Defendants argue, Plaintiffs "have not shown that Defendants' *lease cancellation* decision makes it 'impossible for a court to grant any effectual relief whatever.'"[46] Lastly, Defendants assert that "Rule 60(b) offers nothing to save [Plaintiffs'] Motion" because the lease cancellation is not an extraordinary circumstance.[47] Defendants contend that Plaintiffs were on notice that the

---

[43] Docket 89 at 4-5.

[44] Docket 89 at 4-5. *See also* Plaintiffs' declarations *supra* note 15.

[45] Docket 89 at 7-8.

[46] Docket 89 at 3-4 (emphasis in original) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). *See also* Docket 90 at 5 (noting that both EO 13990 and the Secretarial Order enforcing the Moratorium, "both of which were focal points of this litigation," are still in place and still prohibit "any oil and gas activities on the Coastal Plain until the agency adopts a revised oil and gas program").

[47] Docket 89 at 6; *see also* Docket 90 at 11.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 12 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 12 of 19

supplemental NEPA review would "determine whether the leases should be affirmed, voided, or subject to additional mitigation measures," and Plaintiffs do not show that they were entitled to defend against the cancellation.[48]

"The mootness doctrine 'requires that an actual, ongoing controversy exist at all stages of federal court proceedings.'"[49] "[T]he central question . . . is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."[50] "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."[51]

The Court finds that this case is not moot, because it would be possible for a court to grant some effectual relief to Plaintiffs in this case. Indeed, it appears that Plaintiffs are seeking from the D.C. district court much the same relief that this Court previously denied them—that is, an order directing the federal government to proceed not only with leasing at ANWR, but also directing the federal government to proceed with "exploration" and "development" at ANWR, which is

---

[48] Docket 89 at 6.

[49] *Leigh v. Salazar*, 677 F.3d 892, 896 (9th Cir. 2012) (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011)); *see also Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))).

[50] *Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 824 F.3d 807, 812 (9th Cir. 2016) (citation omitted).

[51] *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1208 (9th Cir. 2021) (quoting *Knox*, 567 U.S. at 307).

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 13 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 13 of 19

effectively seeking an order that would lift the Moratorium.[52] Stated differently, if a court were to grant Plaintiffs the remedy of lifting the Moratorium, activities needed to proceed with exploration and development could continue or commence; this relief is effectual for Intervenor-Plaintiff State of Alaska because it would both increase economic activity and employment in the State and reduce the delay in the State's collection of lease rental payments and royalty revenue.[53] And, if Plaintiffs were to prevail in the D.C. district court on their claim that the lease cancellation is invalid—or new leases are issued when the statutorily mandated second lease sale is held later this year—then Plaintiffs' interest in the legality of the Moratorium, which this Court has now resolved, is once again directly relevant. And unlike in *Munsingwear*, where the commodity was decontrolled such that the challenged regulation no longer had any applicability to that commodity, which then made that case moot, the Moratorium here has not been invalidated or rescinded by the agency with respect to development activities at ANWR.[54]

---

[52] *Compare* Amended Complaint at 31, *Alaska Indus. Dev. & Exp. Auth.*, Case No. 1:23-cv-03126-JMC, ECF No. 11 (seeking "[a]n order directing, on a preliminary and final basis, that Defendants proceed with leasing, exploration, and development of the ANWR Coastal Plain as prescribed in the Tax Act, § 20001"), *with* Docket 34 at 41 (2d Am. Compl.) (seeking "[a]n order compelling Defendants to proceed with leasing and development as prescribed by Congress in ANILCA and the 2017 Tax Act").

[53] *See* Docket 59-1 at ¶¶ 2-4; Docket 22 at ¶ 32 (State's Compl. in Intervention) ("Under the Tax Act and other applicable law, the State earns revenues from sales, bonuses, royalties, and rentals associated with Coastal Plain oil and gas leasing.").

[54] *See Munsingwear*, 340 U.S. at 37.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 14 of 19

Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 14 of 19

Further, while KIC, as one of AIDEA's subcontractors, had an interest intertwined with AIDEA being able to develop its leases,[55] KIC has also advanced an interest separate from AIDEA. KIC has asserted that "[b]eyond the harm to KIC as a result of BLM's suspension of AIDEA's leases, the moratorium prevents KIC from performing its own Coastal Plain seismic operations," which then "precludes KIC from obtaining valuable data regarding potential oil and gas reserves on its own lands."[56] If the Moratorium were lifted, then KIC would no longer be legally precluded from performing seismic operations for its own purposes. This constitutes some relief that a court could grant.

Finally, the Court is not persuaded by Plaintiffs' argument that vacatur of the Court's prior order and judgment is appropriate pursuant to Rule 60(b)(6) due to the lease cancellation, which Plaintiffs characterize as an "extraordinary circumstance."[57] Rather, Plaintiffs were on notice that "the additional NEPA analysis [was] to determine whether the leases should be affirmed, voided, or subject to additional mitigation measures."[58] Thus, that AIDEA's leases would later

---

[55] *See* Docket 93 at 11 & n.32.

[56] Docket 60-2 at ¶ 13 (Decl. Charles Lampe) (explaining that, "[a]s a result of the moratorium, the BLM and FWS sent a letter to KIC in August 2021 indicating that they had halted processing KIC's application to conduct seismic operations on the Coastal Plain and the accompanying [Incidental Harassment Authorization] application").

[57] *See* Docket 84 at 9-13; *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 468 (9th Cir. 2023) ("Relief under Rule 60(b)(6)—which is ordinarily addressed to the wide discretion of the district court—is available only in extraordinary circumstances." (internal quotation marks omitted)).

[58] AR 3405.

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 15 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 15 of 19

be cancelled should not have been totally unexpected. Moreover, while Plaintiffs claim that they "would have appealed from the Court's final order" but for the lease cancellation, the Court notes that there was no obstacle to Plaintiffs appealing from that judgment to the Ninth Circuit.[59] Accordingly, no relief is justified pursuant to Rule 60(b)(6).

In light of the foregoing, the Court finds that this case is not moot because it is not "impossible for a court to grant any effectual relief whatever to the prevailing party," such that vacatur of the Court's judgment is not warranted.[60]

## II. Motion to Alter or Amend Summary Judgment Order and Judgment

In their Rule 59(e) motion filed prior to the lease cancellation, Plaintiffs request that the Court amend its prior order at Docket 72 and judgment at Docket 73 so as to allow for lease implementation actions that do not impact the environment, such as archeological and other surveys.[61] In addition, Plaintiffs ask the Court to amend its order to "recognize that the various follow-up matters ancillary to the issuance of the leases by the December[] 2021 statutory deadline must be addressed by the Federal Defendants with an urgency and timeliness proportional to the statutory deadline for the issuance of the leases."[62] However,

---

[59] *See* Docket 84 at 3.

[60] *See Native Vill. of Nuiqsut*, 9 F.4th at 1208 (quoting *Knox*, 567 U.S. at 307).

[61] Docket 76 at 2.

[62] Docket 76 at 11 (citing Tax Act § 20001(c)(2) ("The Secretary shall issue any rights-of-way or easements across the Coastal Plain for the exploration, development, production, or

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 16 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 16 of 19

once the lease cancellation occurred, Federal Defendants noted in their response that Plaintiffs "could not undertake lease implementation actions regardless of whether they prevail on their Motion, because the Department of the Interior cancelled the corresponding leases in a Decision dated September 6, 2023."[63] In their reply, Plaintiffs acknowledge that the lease cancellation "overt[ook] the present Motion" in that regard and that they would instead be filing the above Rule 60(b) motion.[64] Plaintiffs also request that, should the Court find the case not moot, the Court grant the motion to amend the judgment.[65]

Plaintiffs' first request seeking amendment to the Court's order pertaining to archeological surveys and other lease implementation actions is now moot given that AIDEA's leases have been cancelled. However, Plaintiffs' second request regarding timelines for "follow-up matters ancillary to the issuance of the leases" from the December 2021 sale is not moot, because this request directly implicates the validity of the Moratorium, which this Court has resolved.[66] While Plaintiffs make this second request pursuant to Rule 59(e), they fail to identify under which of the four basic grounds they seek relief, and the Court finds that Plaintiffs have

---

transportation necessary to carry out this section.")).

[63] Docket 79 at 4 n.2.

[64] Docket 83 at 3.

[65] Docket 83 at 10.

[66] *See* Docket 76 at 11 (citing Tax Act § 20001(c)(2)).

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 17 of 19

not shown that any of the four bases apply.[67] Although Plaintiffs may disagree with the Court's discussion of case law, Plaintiffs have not shown that there was a manifest error of law or fact.[68] They have not presented newly discovered or previously unavailable evidence. Nor do they claim that a manifest injustice has occurred or that there has been any intervening change in controlling law.[69] Accordingly, the Court finds that there is no basis to alter its judgment regarding timelines for follow-up matters ancillary to the December 2021 lease sale. Given the "considerable discretion" the Court has in granting or denying a Rule 59(e) motion, the Court denies this motion.[70]

---

[67] *See Allstate Ins. Co.*, 634 F.3d at 1111 (citations omitted) (holding that, while not limited to these four grounds, a Rule 59(e) motion may be granted "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law").

[68] *See* Docket 83 at 7-8.

[69] *See Allstate Ins. Co.*, 634 F.3d at 1111 (citations omitted).

[70] *Id.* (citation omitted).

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 18 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 18 of 19

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Plaintiffs' and Intervenor-Plaintiff's Motion to Alter or Amend Summary Judgment Order and Judgment at Docket 76 and Plaintiffs' and Intervenor-Plaintiff's Motion for Relief from Final Judgment at Docket 84 are each DENIED.

DATED this 22nd day of February, 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cv-00245-SLG, *AIDEA, et al. v. Biden, et al.*
Order re Motion to Alter or Amend Summary Judgment Order and Judgment and Motion for Relief from Final Judgment
Page 19 of 19
Case 3:21-cv-00245-SLG   Document 97   Filed 02/22/24   Page 19 of 19